**STONE CONTAINER CORPORATION, Stone Container International and Stone Container Savannah River Pulp & Paper, Plaintiffs–Cross Appellants,**

v.

**UNITED STATES, Defendant– Appellant.**

Nos. 99–1333, 99–1334.

United States Court of Appeals, Federal Circuit.

Oct. 12, 2000

Kirk T. Hartley, Katten Muchin & Zavis, of Chicago, Illinois, argued for plaintiffs-cross appellants. With him on the brief were Mark S. Zolno, and Michael E. Roll.

Todd M. Hughes, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were David W. Ogden, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and Lara Levinson, Attorney.

Munford Page Hall, II, Dorsey & Whitney LLP, of Washington, DC, for amicus curiae New Holland North America, Inc.

Robert T. Wray, Holland & Knight, LLP, of Washington, DC, for amici curiae Steelmet, Inc., et al.

Nicholas J. DiMichael, Thompson, Hine and Flory, of Washington, DC, for amicus curiae The National Industrial Transportation League.

Todd C. Fineberg, Carlos Rodriguez & Associates, of Washington, DC, for amici curiae Addison Wesley Longman, et al.

Before, BRYSON, LINN, and DYK Circuit Judges.

DYK, Circuit Judge.

## DECISION

In *United States v. United States Shoe Corp.*, 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998), the Supreme Court held that the Harbor Maintenance Tax ("HMT"), 26 U.S.C. § 4461(a), violated the Export Clause of the Constitution. Exporters have filed thousands of refund claims seeking recovery of HMT payments. Many of these refund suits were filed some years after the taxes were paid. This case was designated as a test case by the Court of International Trade to determine the applicable limitations period for these suits. We hold that the two-year statute of limitations of 28 U.S.C. § 2636(i) governs such suits; that the limitations period was tolled by the filing of the class action in *Baxter Healthcare Corp. v. United States*, 925 F.Supp. 794 (Ct. Int'l Trade 1996); but that the tolling period expired when the class action was dismissed by the

district court in *Baxter.* Accordingly, we *affirm.*

I

The facts are undisputed. Stone Container Corporation, Stone Container International, and Stone Container Savannah River Pulp & Paper (collectively, "Stone") made regular HMT payments from 1987 through 1998, and the United States and Stone have stipulated to the amount, quarter, and date for each payment made. In *United States Shoe,* the Supreme Court held that the Court of International Trade has exclusive jurisdiction over suits for refund under 28 U.S.C. § 1581(i).[1] *See United States Shoe,* 118 S.Ct. at 1294 n. 3. On October 15, 1996, Stone filed suit in the Court of International Trade under 28 U.S.C. § 1581(i) seeking recovery of all of its HMT payments.

The limitations period for suits brought under § 1581(i) is specified by 28 U.S.C. § 2636(i):

> A civil action of which the Court of International Trade has jurisdiction under section 1581 of this title, other than an action specified in subsections (a) – (h) of this section, is barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues.

The parties agreed that the statute of limitations, if applicable, ran from the date of payment of the tax, but they disputed whether the statute of limitations had been tolled by the filing of a class action in *Baxter.* If not tolled, a two-year limitations period would bar recovery of a substantial portion of the payments made by Stone.

*Baxter* was filed on October 27, 1994, and sought certification of a class which would have comprised all persons who had paid the HMT in connection with the export of commercial cargo. On May 7, 1996, the Court of International Trade ruled that because of the particular posture of cases seeking HMT refunds, a class action did not provide a superior mechanism for resolution of those disputes, and the Court of International Trade therefore denied class certification. *See Baxter Healthcare Corp.,* 925 F.Supp. at 800. While Stone was not a named party in *Baxter,* it was a member of the putative class. Stone argued that the filing of the Baxter class action tolled the statute of limitations from the date of the filing through the present and that the tolling would continue until the class action issue was no longer appealable. At oral argument, counsel for Stone (who is also counsel for the taxpayers in *Baxter* ) represented that a portion of *Baxter* remained pending and that, after a final judgment in the trial court, taxpayers could still file an appeal seeking review of the 1996 denial of class certification by the *Baxter* trial court.

The Court of International Trade held that the two-year limitations period applied and that the filing of *Baxter* tolled the statute of limitations for Stone. The Court of International Trade relied upon

---

1. In *Swisher Int'l Inc. v. United States,* 205 F.3d 1358 (Fed.Cir.2000), this court held that an exporter seeking a refund could alternatively file a claim for refund with the Customs Service, protest Customs' refusal to grant a refund, and, upon denial of the protest, sue in the Court of International Trade under § 1581(a). *Swisher* held that neither the statute nor the regulations imposed any time limit on the refund request, although the regulations imposed a 180-day time limit on the Court of International Trade suit after the denial of the protest. *See id.* at 1369. Although Stone has not sought to utilize the refund/protest approach upheld in *Swisher,*

Stone contends that the *Swisher* alternative still remains open to exporters who can marshal the necessary paperwork to file a refund claim with the Customs Service, even if the exporter has filed a § 1581(i) claim which is barred in whole or in part by the statute of limitations. Stone's argument raises serious questions, including whether the doctrines of laches, waiver, or election of remedies would bar such an effort. Those questions are not presented by this case, and Stone concedes that at least some of the HMT claimants do not have the paperwork necessary to file a refund claim.

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), for the proposition that filing a class action under Rule 23 of the Court of International Trade stops the statute of limitations from running for all claims covered by the representative action. Relying on *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Court of International Trade also held that such tolling applied in suits against the United States under § 2636. However, citing the reasoning of *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir.1998) (en banc), the Court of International Trade held that tolling ended when the district court in *Baxter* denied class certification. The Court of International Trade rejected Stone's additional contentions, such as Stone's argument that the government cannot create statutes of limitations for claims based on unconstitutional taxes. The United States appealed, and Stone cross-appealed.

## II

The issues raised in these appeals are all questions of law, which we review de novo. *See Medline Indus., Inc. v. United States*, 62 F.3d 1407, 1409 (Fed.Cir. 1995).

At the outset, relying on Justice Scalia's concurring opinion in *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995), Stone argues that it is unconstitutional to apply any statute of limitations to refund claims with respect to an unconstitutional tax. Stone does not explain why unconstitutional taxes, unlike other constitutional violations, should be free of statutes of limitations. In any event, Stone's argument is directly foreclosed by the Supreme Court's decision in *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). In *McKesson*, the Florida Supreme Court struck down a tax that unconstitutionally discriminated against interstate commerce, but it refused to provide taxpayers with a refund. The United States Supreme Court reversed, holding that when a state requires payment of a tax and relegates challenges to the tax to postpayment refund actions, "the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief." *McKesson*, 496 U.S. at 31, 110 S.Ct. 2238. Although *McKesson* is based on the Due Process Clause of the Fourteenth Amendment, its principles are equally applicable to the federal government through the Due Process Clause of the Fifth Amendment.[2]

However, the Supreme Court in *McKesson* also stated explicitly that a state was free to impose various procedural requirements on actions for postdeprivation relief, including "enforc[ing] relatively short statutes of limitations applicable to such actions." *See id.* at 45, 110 S.Ct. 2238. Thus, the Supreme Court has rejected Stone's argument that it is unconstitutional to apply a statute of limitations to an unconstitutional tax.

Stone invites this court to disregard the Supreme Court's statements that it is permissible to enforce a statute of limitations in suits to recover payment of unconstitutional taxes. According to Stone, those statements are mere dicta, and we are free to disregard them. We are required to decline Stone's invitation. As a subordinate federal court, we do not share the Supreme Court's latitude in dis-

---

**2.** In the federal context, as in the state context, a taxpayer is generally barred from injunctive relief, thus giving rise to the obligation to provide meaningful backward-looking relief. *See Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962); 26 U.S.C. § 7421(a).

Since we reject Stone's due process argument for the reasons stated in text, we need not decide whether the possibility of injunctive relief with respect to the HMT should alter the governing due process requirements.

regarding the language in its own prior opinions. As the Supreme Court cautioned in *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994), "once the [Supreme] Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law."[3] The Supreme Court can accept for review only a limited number of cases, and it must give guidance to the lower federal and state courts in broad language. Here, the Court's statements are both explicit and carefully considered, and we must follow them.[4]

Moreover, the right to a refund of unconstitutional taxes collected under compulsion is, in effect, a claim for deprivation of property without due process. *See McKesson*, 496 U.S. at 36, 110 S.Ct. 2238. Both the Supreme Court and this court have repeatedly held that the federal government may apply statutes of limitations to just compensation claims. *See, e.g., Block v. North Dakota*, 461 U.S. 273, 292, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Boling v. United States*, 220 F.3d 1365, 1375 (Fed.Cir.2000). As the Supreme Court ruled in *Block*, a "constitutional claim can become time barred just as any other claim can." *Block*, 461 U.S. at 292, 103 S.Ct. 1811; *see also United States v. Dalm*, 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (holding that a statute of limitations barred an untimely claim for a federal income tax refund, "regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected'" (citations omitted)).

### III

■ Stone also argues that a tax refund remedy must be "clear and certain" and that the remedy here under § 1581(i) was not "clear and certain" before the Supreme Court's decision in *United States Shoe*. Stone urges that in view of the confusion surrounding the remedy, taxpayers at a minimum should have the benefit of the Tucker Act's six-year limitations period. *See* 28 U.S.C. § 1491; 28 U.S.C. § 2501. While we agree with Stone that there was confusion surrounding the proper remedy before *United States Shoe*, we do not agree that this confusion requires us to afford taxpayers the benefit of the longer limitations period.

The HMT provides that "[f]or purposes of determining the jurisdiction of any court of the United States or any agency of the United States, the tax imposed by this subchapter shall be treated as if such tax were a customs duty." 26 U.S.C. § 4462(f)(2) (1994). Before *United States Shoe*, there was considerable confusion over whether this provision gave rise to jurisdiction under 28 U.S.C. § 1581(a) or 28 U.S.C. § 1581(i). In either case, however, jurisdiction lay only in the Court of International Trade. Section 1581(a) provides the Court of International Trade with jurisdiction over suits contesting the denial of a Customs protest, while § 1581(i) provides for jurisdiction over suits arising out of "administration and enforcement with respect to the matters referred to in [the preceeding paragraphs]," which include any laws providing revenue from imports. In *United States Shoe*, the government argued that jurisdiction was proper under § 1581(a), and that recovery was limited to amounts protested within ninety days of payment. *See United States Shoe Corp. v. United States*, 114 F.3d 1564, 1568 (Fed.Cir.1997), *aff'd* 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453

---

**3.** While in *Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448 (Fed.Cir.1997), this court characterized certain statements in three early Supreme Court cases as "dicta," in fact the statements in those Supreme Court cases did not contradict the holding of *Evans Cooling* that the on-sale bar is not subject to an exception for sales made by a third party which misappropriates the patented invention. *See id.* at 1452–54.

**4.** Other circuits have followed this approach. *See, e.g., Natural Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1189 (D.C.Cir.2000); *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir.1996).

(1998). The Supreme Court, however, held that exclusive jurisdiction existed under § 1581(i). *United States Shoe*, 523 U.S. at 365–66, 118 S.Ct. 1290. In *Swisher*, this court subsequently held that an exporter seeking a refund could alternatively file a claim for refund, protest Customs' refusal to grant a refund and, upon denial of the protest, sue in the Court of International Trade under § 1581(a). *See Swisher Int'l Inc. v. United States*, 205 F.3d 1358, 1369 (Fed.Cir.2000). Although jurisdictional confusion thus existed, it is significant that neither the Supreme Court nor this Court ever suggested that a suit for recovery of the HMT could be maintained under the Tucker Act with its six-year statute of limitations.

Armed with this confusion over the remedy available for challenges to the HMT, Stone cites *Reich v. Collins*, 513 U.S. 106, 108, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994), for the proposition that "due process requires a 'clear and certain' remedy for taxes collected in violation of federal law." *Reich*, however, is best characterized as a "bait-and-switch" case. The Supreme Court in *Reich* stated that Georgia was not allowed to "hold out what plainly appears to be a 'clear and certain' postdeprivation remedy and then declare, only after the disputed taxes have been paid, that no such remedy exists." *Id. Reich* stands, at most, for the proposition that a state (or the federal government) may not restrict access to postpayment relief when a taxpayer reasonably relies on the availability of such relief. *See Newsweek, Inc. v. Florida Dep't of Revenue*, 522 U.S. 442, 445, 118 S.Ct. 904, 139 L.Ed.2d 888 (1998) (per curiam) (requiring remedy for taxpayer who "reasonably relied on the apparent availability of a postpayment refund"). Here, Stone was not confronted with the "bait and switch" situation that the Supreme Court addressed in *Reich*, and it does not claim otherwise. As we have noted, no previous decision of this or any other court held that Tucker Act jurisdiction was available to challenges to the HMT.

We note that the requirement of a "clear and certain" remedy appears to have originated with the opinion by Justice Holmes in *Atchison, Topeka, & Santa Fe Railway Co. v. O'Connor*, 223 U.S. 280, 285, 32 S.Ct. 216, 56 L.Ed. 436 (1912), and to have been recently reiterated as a constitutional requirement in *Reich v. Collins*. But we are aware of no case, and none has been called to our attention, holding that mere existence of uncertainty in the remedy amounts to a constitutional violation. Indeed, Justice Brandeis, speaking for a unanimous Court, specifically instructed us that it does not in *Brinkerhoff–Faris Trust & Savings Co. v. Hill*, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930). That case was essentially the same as *Reich* (and was cited in *Reich*, 513 U.S. at 113, 115 S.Ct. 547), and the Court reached the same result—it held that a state court denied due process when it overruled a prior decision that would have allowed a particular remedy, substituted a new remedy, and held that the new remedy was barred. In so holding the Court addressed our very problem, stating in a footnote: "Had there been no previous construction of the statute by the highest court, the plaintiff would, of course, have had to assume the risk that the ultimate interpretation by the highest court might differ from its own." *Id.* at 682 n. 9, 50 S.Ct. 451. That is exactly the case here. Before *United States Shoe*, there was no ruling by the Supreme Court regarding the jurisdiction over challenges to the HMT, and Stone bore the risk that reliance on the Tucker Act might prove misplaced.

Again, both the Supreme Court and this court have assumed that the existence of questions as to the applicability of a statute of limitations or its tolling do not prevent courts from applying the statute (as construed) to claims for just compensation. *See, e.g., Block v. North Dakota*, 461 U.S. 273, 292, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Boling v. United States*, 220 F.3d 1365, 1375 (Fed.Cir.2000). The same prin-

ciple necessarily applies to claims for the refund of unconstitutional taxes.

 To be sure, even if government action does not rise to the level of a due process violation, governmental misconduct may sometimes result in equitable tolling of the statute of limitations. *See Irwin*, 498 U.S. at 96, 111 S.Ct. 453; *Watkins v. United States Army*, 875 F.2d 699, 706–09 (9th Cir.1989). We need not decide whether such equitable tolling could occur against the government, for Stone has not shown any misconduct by the government which misled it as to the applicable limitations period.[5]

## IV

 We turn next to Stone's more substantial argument—that the filing of the class action in *Baxter* tolled the statute of limitations during the pendency of that suit. The United States urges that *Baxter* did not toll the statute. We agree with Stone.

 A statute of limitations is a condition on the waiver of sovereign immunity by the United States. *See, e.g., Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Although courts "should not construe such a time-bar provision unduly restrictively, [they] must be careful not to interpret it in a manner that would 'extend the waiver beyond that which Congress intended.'" *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)).

The question here is whether the limitations period was tolled. The Supreme Court's decisions do not speak with great clarity on the subject of equitable tolling against the government. In *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court addressed whether equitable tolling could apply to a claim against the government under Title VII. The relevant statute required the employee to file a civil action "[w]ithin thirty days of receipt of notice of final action taken by ... the Equal Employment Opportunity Commission." 42 U.S.C. § 2000e–16(c) (1990). The petitioner had failed to meet this deadline because his lawyer was absent from his office when the Equal Employment Opportunity Commission notice was received. The Supreme Court adopted "a more general rule to govern the applicability of equitable tolling in suits against the Government." *Irwin*, 498 U.S. at 95, 111 S.Ct. 453. The Court held that once Congress had made a waiver of sovereign immunity, the "same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95–96, 111 S.Ct. 453. The Court explained that this new rule was "a realistic assessment of legislative intent." *Id.* at 95, 111 S.Ct. 453. The Court nevertheless rejected the petitioner's request that equitable tolling should be applied to his failure to file in a timely manner, noting that "the principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96, 111 S.Ct. 453. The Court also explicitly overruled *Soriano v. United States*, 352

---

**5.** We also reject Stone's suggestion that we disregard as dicta the Supreme Court's statements in *United States Shoe* that "the Court of International Trade has exclusive jurisdiction over challenges to the HMT under § 1581(i)(4)" and that "the Court of Federal Claims lacks jurisdiction over the challenges to the HMT currently pending there." *United States Shoe*, 118 S.Ct. at 1293 n. 3.

Since the Court of International Trade's jurisdiction is "exclusive," there is no jurisdiction under the Tucker Act. *See* 28 U.S.C.

§ 1491. Stone's suggestion that this court order a transfer to the Court of Federal Claims is thus meritless because that court lacks jurisdiction. Stone's other contentions, including its suggestion that we dispense with the doctrine of sovereign immunity (a position inconsistent with our analysis of whether taxpayers may be awarded interest on refunds of the HMT in *International Bus. Machines Corp. v. United States*, 201 F.3d 1367, 1374–75 (Fed. Cir.2000)), are frivolous and do not merit separate discussion.

U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). *See Irwin,* 498 U.S. at 94–95, 111 S.Ct. 453. In *Soriano,* the petitioner, a resident of the Philippines, argued that the statute of limitations for his takings case should be equitably tolled based on wartime hostilities in the Philippines. The Court had rejected the possibility of equitable tolling against the government: "Congress was entitled to assume that the limitation period it prescribed meant just that period and no more." *Soriano,* 352 U.S. at 276, 77 S.Ct. 269.

In *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), however, the Supreme Court appeared to retreat somewhat from the general rule announced in *Irwin.* *Brockamp* involved claims for tax refunds governed by the two-year limitations period of § 6511 of the Internal Revenue Code. The taxpayers urged that the two-year limitations period be tolled on the basis of disability (senility in one case, alcoholism in another). The Court first suggested that tolling might not apply to claims against the government, which were not similar to claims against private parties. However, the Court was "willing to assume, favorably to the taxpayers but only for argument's sake, that a tax refund suit and a private party suit for restitution are sufficiently similar to warrant asking *Irwin*'s negatively phrased question: Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply?" *Brockamp,* 519 U.S. at 350, 117 S.Ct. 849. The Court went on to reject equitable tolling because the relevant limitations statute manifested congressional intent to preclude tolling under § 6511. In contrast to the simple language of ordinary limitations periods, the tax statute set forth its limitations in "a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." *Id.* The statute also repeated the limitations period "several times in several different ways." *Id.* at 351, 117 S.Ct. 849. The statute set forth explicit exceptions to its time limits, and these

exceptions did not include equitable tolling. *See id.* Finally, the Court pointed to the underlying subject matter of tax collection in reinforcing its conclusion. It noted that the IRS processes over 200 million returns and issues 90 million refunds each year. *See id.* at 352, 117 S.Ct. 849. *See also United States v. Beggerly,* 524 U.S. 38, 48–49, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (rejecting equitable tolling as inconsistent with the Quiet Title Act).

This court has previously struggled to reconcile *Irwin* and *Brockamp* in connection with other statutes. *See, e.g., Bailey v. West,* 160 F.3d 1360, 1362–68 (Fed.Cir. 1998) (en banc) (allowing equitable tolling of time limit for appealing Board of Veterans' Appeals decision to Court of Veterans Appeals); *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461–63 (Fed.Cir. 1998) (rejecting equitable tolling in tax refund case of limitations period specified in 26 U.S.C. § 6532(a)). Here, however, we need not decide the difficult question concerning the scope of judge-made equitable tolling doctrines because the tolling here is mandated by statute.

On their face, neither Rule 23 of the Federal Rules of Civil Procedure nor the corresponding Rule 23 of the Court of International Trade (which is applicable here) tolls the statute of limitations. But Rule 3 of the Federal Rules of Civil Procedure and Rule 3 of the Court of International Trade do provide that an "action is commenced by filing a complaint." It has long been held that, at least for federal causes of action, the result of Rule 3 is that the filing of a complaint stops the running of the statute of limitations. *See Henderson v. United States,* 517 U.S. 654, 657, 657 n. 2, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996). However, in a non-class action, once a complaint is dismissed a plaintiff does not usually enjoy the benefits of tolling for the period during which the action was pending. For example, a suit voluntarily dismissed under Federal Rule of Civil Procedure 41(a) is treated "as if it

had never been filed," and the statute of limitations is therefore not tolled during the pendency of such a case. Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2367 (2d ed.1995); *Beck v. Caterpillar, Inc.*, 50 F.3d 405, 407 (7th Cir.1995). *But see Irwin*, 498 U.S. at 96, 111 S.Ct. 453 (noting that equitable tolling has been allowed when a claimant has filed a defective pleading during the limitations period).

A somewhat different situation applies under Rule 23 for class actions. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." The rule of *American Pipe* appeared to apply only to purported members of the class who made timely motions to intervene after the trial court denied class certification. However, in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court extended the tolling rule of *American Pipe* to all members of the asserted class, including those who subsequently filed their own suits. *Id.* at 353–54, 103 S.Ct. 2392.

*American Pipe* and *Crown, Cork & Seal* were not based on judge-made equitable tolling, but rather on the Court's interpretation of Rule 23. In *American Pipe*, the Court explained that "[u]nder present Rule 23, . . . the filing of a timely class action complaint commences the action for all members of the class as subsequently determined." *American Pipe*, 414 U.S. at 550, 94 S.Ct. 756. The Court then held that the class action suspended the statute of limitations for all asserted class members because the contrary approach "would frustrate the principal function of a class suit" by forcing putative class members to file suit to protect their rights. *Id.* at 551, 94 S.Ct. 756. Similarly, in *Crown,*

*Cork & Seal Co.*, 462 U.S. at 351, 103 S.Ct. 2392, the Court recognized that unless the statute of limitations were tolled by the filing of a class action, "[t]he result would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid."

This court has already held in *Wood–Ivey Sys. Corp. v. United States*, 4 F.3d 961 (Fed.Cir.1993), that the Federal Rules of Civil Procedure govern tolling against the government. Because "[a]ll laws in conflict with [the Federal Rules of Civil Procedure] shall be of no further force or effect after such rules have taken effect," 28 U.S.C. § 2072(b), the Federal Rules of Civil Procedure, like the Federal Rules of Criminal procedure, are "as binding as any federal statute." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

To be sure, Rule 23 of the Court of International Trade, unlike Rule 23 of the Federal Rules of Civil Procedure, is not statutory. Congress authorized the Court of International Trade to establish its own procedural rules, *see* 28 U.S.C. § 2633(b), and unlike the Federal Rules of Civil Procedure, the Court of International Trade's rules are not required to be transmitted to Congress. *See* 28 U.S.C. § 2074(a). But here the statute of limitations itself incorporates the rules of the Court of International Trade: an action under 28 U.S.C. § 1581(i) "is barred unless commenced *in accordance with the rules of the court* within two years after the cause of action first accrues." 28 U.S.C. § 2636(i) (emphasis added). Thus, there is no basis for distinguishing the Court of International Trade's Rule 23 from Rule 23 of the Federal Rules of Civil Procedure for purposes of *American Pipe*. Having determined that Rule 23 tolling is statutory rather than equitable, it follows that the rule of *American Pipe* applies to the government just as it does to private parties, both generally and in this particular case.

### V

Our final question is whether the tolling here stopped with the dismissal of the class action by the district court in *Baxter* or whether it continues until the district court's decision is no longer subject to appeal. The Eleventh Circuit directly addressed this question in *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374 (11th Cir.1998) (en banc), and it concluded that tolling ends with the district court's dismissal of the class action. We agree.

In reaching its conclusion that tolling ends when class certification is denied in the trial court, the *Armstrong* court both undertook a thorough review of the Supreme Court's cases regarding equitable tolling and also carefully examined the practical ramifications of its choice of rules. *See Armstrong*, 138 F.3d at 1380–91. We find its analysis persuasive. For example, in *Crown, Cork & Seal Co.*, the Supreme Court stated: "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Crown, Cork & Seal Co.*, 462 U.S. at 354, 103 S.Ct. 2392. The suggestion that putative class members may choose to intervene as plaintiffs after denial implies that tolling ends with the district court's denial of class certification—if putative class members were to wait until all appeals were final, there would rarely be a "pending action" left into which putative class members might intervene.

Regarding the practical implications of resuming the running of the statute of limitations upon a district court's denial of class certification, the Eleventh Circuit recognized that its rule would lead to unnecessary litigation in the few cases in which a district court abuses its discretion in denying class certification and is reversed on appeal. In those cases, in order to protect their rights prior to reversal of the district court's denial of class certification, putative class members will be required to take duplicative and unnecessary action—intervening in the pending action or filing their own suits. Such cases, however, are very unusual. In contrast, the Eleventh Circuit found that continuing to toll the statute of limitations through the date on which the district court decision is no longer subject to review on appeal would "seriously contravene the policies underlying statutes of limitations." *Armstrong*, 138 F.3d at 1388. Limitations periods could be tolled for years. During these long delays, evidence could be lost, memories could fade, and witnesses could disappear. Defendants would have no way of knowing how many individual claims would exist if class certification were denied. Often, plaintiffs will not seek review of a denial of class certification until after final judgment. Even if plaintiffs seek interlocutory appeal (as now allowed by Rule 23(f) of the Federal Rules of Civil Procedure but not the Court of International Trade rules), an appellate court has discretion to deny the appeal, thereby leaving the certification unresolved until final judgment. *See id.* at 1389. This case provides a perfect example of the lengthy delays that would be created if the limitations period were tolled until the appellate process was complete: it has been over four years since the district court in *Baxter* denied class certification, and that case remains ongoing.

Even prior to *Armstrong*, the rule that tolling ends with a trial court's denial of class certification was widely followed in other circuits. *See Nelson v. County of Allegheny*, 60 F.3d 1010, 1013 (3d Cir. 1995); *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 390 (5th Cir.1989); *Andrews v. Orr*, 851 F.2d 146, 149–50 (6th Cir.1988); *Fernandez v. Chardon*, 681 F.2d 42, 48 (1st Cir.1982). Furthermore, we are aware of no contrary court of appeals decision since *Armstrong* was decided, and at oral argument Stone's counsel

conceded that there are none.[6] *See, e.g., Hemenway v. Peabody Coal Co.,* 159 F.3d 255, 266 (7th Cir.1998). In fact, *Jimenez v. Weinberger,* 523 F.2d 689 (7th Cir.1975), is apparently the only appellate case with language in conflict with *Armstrong.* That court stated that "[i]f [the district court] decision had expressly refused to certify the case as a class action, we think the tolling would have continued if the plaintiffs had appealed from such a ruling, but probably would not have continued if they had acquiesced." *Id.* at 696. This comment, however, was dictum: the *Jimenez* court concluded that the district court had reached a decision on the merits without ruling on the class certification issue. Thus, it held, class claims remained pending. *Jimenez,* 523 F.2d at 696–97. In light of the sound reasoning of the *Armstrong* court, we hold that tolling ends when class certification is denied in the trial court.

## CONCLUSION

For the foregoing reasons, the decision of the Court of International Trade is affirmed.

## COSTS

No costs.

*AFFIRMED*

---

**6.** Conflicts among the circuits do exist in two other contexts. *See* Robert H. Klonoff and Edward K. Bilich, *Class Actions and Other Multi–Party Litigation* 469 (2000). First, there is a conflict as to whether the rule of *American Pipe* applies to actions founded on state law. *Compare Hemenway v. Peabody Coal Co.,* 159 F.3d 255, 265 (7th Cir.1998) *with Adams Public School Dist. v. Asbestos Corp.,* 7 F.3d 717, 719 (8th Cir.1993). Second, there is a conflict regarding whether the rule of *American Pipe* applies to opt-in class actions such as those under the ADA. *See Basch v. Ground Round Inc.,* 139 F.3d 6, 10–11 (1st Cir.1998) (discussing circuit split). As we are confronted here with an opt-out class action arising under federal law, we need not address those questions here.