# United States Court of Appeals for the Federal Circuit

2009-5048

EDWARD L. BRIGHT, II, FRED E. EVANS, NANCY A. EVANS,
EARLEEN FAUVERGUE, CLARENCE FORKNER, RANDY W. FROEBE,
DEBRA J. FROEBE, GENEVA GRUBBS, NORMA LOU HALL, HOMER E. HAMILTON, DEBBIE
M. HAMILTON, SHIRLEY HENDRICKS, DAVID HOUSER, GAIL HOUSER, PATRICK J.
O'BRYAN, TRUSTEE OF THE PATRICK J. O'BRYAN REVOCABLE LIVING TRUST UNDER
AGREEMENT DATED 9/7/2001, LESTER ROARK,
DONALD LEE ROPER, II, RICKY D. RUSSELL, B. LORENE SOPER,
BRADY J. STUART, and ROSE M. STUART, for Themselves and As Representatives of a
Class of Similarly Situated Persons,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Mark F. ("Thor") Hearne, II, Lathrop & Gage LLP, of St. Louis, Missouri, argued for plaintiffs-appellants. With him on the brief were Lindsay S.C. Brinton and Meghan S. Largent.

Kristine S. Tardiff, Attorney, Environment and Natural Resources Division, United States Department of Justice, of Concord, New Hampshire, argued for defendant-appellee. With her on the brief were John C. Cruden, Acting Assistant Attorney General; and Kathryn E. Kovacs, Attorney, of Washington, DC.

Nancie G. Marzulla, Marzulla Law, of Washington, DC, for amici curiae Klamath Irrigation District, et al. With her on the brief was Roger J. Marzulla.

Brent W. Baldwin, Baker Sterchi Cowden & Rice, LLC, of St. Louis, Missouri, for amici curiae Larry J. Rhutasel, et al. With him on the brief were Steven M. Wald and J. Robert Sears; and Thomas S. Stewart, of Kansas City, Missouri.

Helen K. Michael, Howrey LLP, of Washington, DC, for amicus curiae National Federation of Federal Employees. With her on the brief was John F. Stanton.

Appealed from: United States Court of Federal Claims

Judge Christine O.C. Miller

# United States Court of Appeals for the Federal Circuit

2009-5048

EDWARD L. BRIGHT, II, FRED E. EVANS, NANCY A. EVANS,
EARLEEN FAUVERGUE, CLARENCE FORKNER, RANDY W. FROEBE,
DEBRA J. FROEBE, GENEVA GRUBBS, NORMA LOU HALL, HOMER E. HAMILTON,
DEBBIE M. HAMILTON, SHIRLEY HENDRICKS, DAVID HOUSER, GAIL HOUSER,
PATRICK J. O'BRYAN, TRUSTEE OF THE PARTICK J. O'BRYAN REVOCABLE
LIVING TRUST UNDER AGREEMENT DATED 9/7/2001, LESTER ROARK,
DONALD LEE ROPER, II, RICKY D. RUSSELL, B. LORENE SOPER,
BRADY J. STUART, and ROSE M. STUART, for Themselves and As Representatives
of a Class of Similarly Situated Persons,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 08-CV-431,
Judge Christine O.C. Miller.

_____

DECIDED: May 3, 2010

_____

Before MICHEL, Chief Judge, RADER, and SCHALL, Circuit Judges,

SCHALL, Circuit Judge.

Plaintiffs-Appellants ("Appellants") are putative members of a class of

landowners seeking compensation under the Fifth Amendment pursuant to the Tucker

Act, 28 U.S.C. § 1491(a)(1). They seek compensation for the alleged taking of their respective property interests under the National Trail Systems Act, 16 U.S.C. §§ 1241-1251 (the "Trails Act"). The United States Court of Federal Claims dismissed Appellants' second amended complaint as to all named plaintiffs other than Earleen Fauvergue, for lack of subject matter jurisdiction. Fauvergue v. United States, 86 Fed. Cl. 82 (2009), and erratum (changing "tenets" to "tenet" on page 16) (filed Mar. 18, 2009) (together, "Dismissal Order"). The court did so on the ground that although Ms. Fauvergue filed a class action complaint and sought class certification prior to expiration of the six-year limitations period prescribed by 28 U.S.C. § 2501, none of the twenty other putative class members opted in to the suit as named party plaintiffs prior to expiration of the period.

For the reasons set forth below, we hold that when a class action complaint is filed in the Court of Federal Claims and class certification is sought prior to expiration of the section 2501 limitations period, the limitations period is tolled. The limitations period is tolled during the period the court allows potential class members to opt in to the class. We therefore reverse the judgment of the Court of Federal Claims dismissing Appellants' second amended complaint and remand the case to the court for proceedings on the merits of Appellants' taking claims.

BACKGROUND

I.

Appellants' taking claims arose under the Trails Act. The Trails Act sets out a statutory scheme pursuant to which unused railroad lines can be converted into designated trails for recreational uses. See Preseault v. Interstate Commerce Comm'n,

494 U.S. 1, 5 (1990) (stating that the purpose of the Trails Act is to preserve shrinking rail trackage by converting unused railroad rights-of-way into recreational trails). We explained the operation of the Trails Act in Caldwell v. United States, 391 F.3d 1226 (Fed. Cir. 2004).

The Surface Transportation Board ("STB") is charged with regulating the construction, operation, and abandonment of most railroad lines in the United States. Id. at 1228. When a railroad seeks to abandon a railroad right of way within the jurisdiction of the STB, it must either (1) file a standard abandonment application or (2) seek an exemption from filing such an application. Id. If the STB approves a standard abandonment application or grants an exemption, and the railroad ceases operation over the line, the STB relinquishes jurisdiction over the abandoned railroad right of way and state law reversionary property interests, if any, take effect. Id. at 1228-29.

Through a process known as "railbanking," the Trails Act provides an alternative to abandoning a railroad right of way. Id. at 1229. The Trails Act allows a railroad to negotiate with a state, municipality, or private group (the "trail operator") to assume financial responsibility for operating the railroad right of way as a recreational trail. Id. If the railroad and the trail operator are willing to negotiate a trail use agreement, the STB stays the abandonment process and issues a notice allowing the railroad right-of-way to be "rail-banked." Id. The effect of this notice, if the railroad and prospective trail operator reach an agreement, is that the STB retains jurisdiction for possible future railroad use and the abandonment of the corridor is blocked, even though the conditions for abandonment are otherwise met. Id. Section 8(d) of the Trails Act states: "[S]uch interim use [for trails] shall not be treated, for purposes of any law or rule, as an

abandonment of the use of such rights-of-way for railroad purposes." 16 U.S.C. § 1247(d). What this means is that the Trails Act prevents the operation of state laws that would otherwise come into effect upon abandonment, specifically, property laws that would "result in extinguishment of easements for railroad purposes and reversion of rights of way to abutting landowners." Rail Abandonments—Use of Rights—of—Way as Trails, Ex Parte No. 274 (Sub-No. 13), 2 I.C.C. 2d 591, 1986 WL 68617 (1986). A Fifth Amendment Taking occurs if the original easement granted to the railroad under state property law is not broad enough to encompass a recreational trail. Caldwell, 391 F.3d at 1229.

The typical railbanking process begins when a railroad files with the STB an abandonment application or, as in this case, a request for an exemption. Id. at 1230. If a request for an exemption is filed and the request is approved, the STB publishes a Notice of Exemption in the Federal Register. Id. A potential trail operator then may file a railbanking petition pursuant to regulations promulgated by the STB. Id. If the petition meets regulatory criteria, and the railroad agrees to negotiate with the potential trail operator, the STB issues a Notice of Interim Trail Use or Abandonment ("NITU") to the railroad and to the potential trail operator for the portion of the right-of-way to be covered by the agreement. Id., citing 49 C.F.R. §§ 1152.29(b)(2) and (d). The NITU allows the rail carrier to discontinue service and salvage track and other equipment without an abandonment taking place. Id. At the same time, the NITU extends indefinitely to permit interim trail use once an agreement is reached between the railroad and the trail operator. Id.

The facts pertinent to this case are not in dispute. Appellants are landowners who allege that the conversion of a railroad line into a public hiking trail under the Trails Act resulted in a Fifth Amendment taking of their reversionary property interests. The railroad line at issue ran 28.25 miles between Columbus, in Cherokee County, Kansas, and Carthage, in Jasper County, Missouri. The line consisted of a 100-foot-plus wide strip of land that was originally secured by the Memphis Carthage & Northwestern Railroad Company (the "MCNRC") in 1876. The MCNRC retained the line until 1980, when it transferred it to the St. Louis and San Francisco Railroad Company. Eventually, following a series of mergers, in 1995 that company became the Burlington Northern and Santa Fe Railway Company (the "BNSF").

On May 23, 2002, The STB published a Notice of Exemption filed by the BNSF. In the Notice, the BNSF sought to abandon the Columbus-Carthage railroad line, based upon two years of nonuse. See The Burlington Northern and Santa Fe Railway Company—Abandonment Exemption—in Cherokee County, KS, and Jasper County, MO, 67 Fed. Reg. 36,298 (May 23, 2002). On June 21, 2002, the STB issued a NITU authorizing conversion of the Columbus-Carthage railroad line into a public-access recreational trail, pursuant to section 8 of the Trails Act. As explained above, the effect of the NITU was to stay railroad abandonment during the pendency of trail use. A further effect of the NITU was to accrue an action for compensation by any affected landowners based on a Fifth Amendment taking. See, e.g., Barclay v. United States, 443 F.3d 1368, 1373 (Fed. Cir. 2006) ("a Trails Act taking begins and a takings claim accrues, if at all, on issuance of the NITU."). Thus, the NITU publication date is the date

on which the six-year limitations period of 28 U.S.C. § 2501 begins to run for a taking claim under the Trails Act. Caldwell, 391 F.3d at 1235. Under section 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Therefore, as of June 21, 2002, June 21, 2008 was the last day on which any affected landowner could file a Fifth Amendment taking claim in the Court of Federal Claims based on the rail-to-trail conversion in this case.

III.

On June 12, 2008, Ms. Fauvergue filed a class-action complaint in the Court of Federal Claims under the Tucker Act. In her complaint, she sought, on behalf of herself and as "representative of a class of similarly situated persons," compensation for the value of the land now occupied by the Columbus-Carthage trail and for the diminished value of the adjoining property. Ms. Fauvergue asserted this claim based on an alleged physical taking of property by the United States as a result of the rail-to-trail conversion of the Columbus-Carthage railroad line under the Trails Act. While Ms. Fauvergue filed the complaint in her name and in anticipation of class-action certification, she was the only named plaintiff in the complaint. Six days later, on June 18, 2008, she filed a motion to certify the class with an accompanying memorandum describing the claims of class members holding fee title to land in Jasper County, Missouri, or Cherokee County, Kansas.

On December 11, 2008, the Court of Federal Claims granted leave to amend the complaint a second time to add twenty putative class members as named plaintiffs, under Court of Federal Claims Rule ("RCFC") 23, the rule governing class actions in the

Court of Federal Claims.  See Fauvergue v. United States, 85 Fed. Cl. 50 (2008).

Thereafter, however, on February 24, 2009, the court granted the government's motion

to dismiss the second amended complaint as to all named class members other than

Ms. Fauvergue, on the ground that the claims of such plaintiffs were barred by the

statute of limitations.  See Dismissal Order, 86 Fed. Cl. at 93.

In its decision, the court drew a distinction between an opt-in class action, such

as in the Court of Federal Claims under RCFC 23, and an opt-out class action under

Federal Rule of Civil Procedure ("FRCP") 23.[1]  The court stated: "Putative members of

an opt-in class action in the Court of Federal Claims must opt in before the expiration of

28 U.S.C. § 2501.  Putative members attempting to opt in after the expiration of 28

U.S.C. § 2501 cannot take advantage of the statutory tolling enjoyed by class members

opting out in federal courts under [FRCP] 23."  See Dismissal Order, 86 Fed. Cl. at 93.

The court recognized that in American Pipe & Construction Co. v. Utah, 414 U.S.

538 (1974), and Crown, Cork & Seal Co., Inc. v. Parker, 462 U.S. 345 (1983), the

Supreme Court allowed the filing of a timely class-action complaint to toll the applicable

statute of limitations for putative members of the class.  Id. at 88-89.  American Pipe

and Crown, Cork & Seal both were decided in the context of FRCP 23's opt-out

procedure.  The court also recognized that in Stone Container Corp. v. United States,

229 F.3d 1345 (Fed. Cir. 2000), this court allowed the filing of a timely class action

complaint to toll the applicable statute of limitations in the Court of International Trade

---

[1]      Under the former, in order to become a class member, an individual must affirmatively respond to a Rule 23(c)(2) notice to "opt in" by requesting inclusion in the action.  See RCFC 23(c)(2) and (3).  Under the latter, all members of a class are included in the action and are bound by the judgment unless they "opt out" by affirmatively requesting exclusion.  See FRCP 23(c)(2) and (3).

for putative members of the class.  Id. at 90.  Stone Container was decided in the context of Court of International Trade Rule 23 ("CIT Rule 23"), which also involves an opt-out procedure.  This court described the tolling in American Pipe, Crown, Cork & Seal, and Stone Container as "statutory tolling."  Stone Container, 229 F.3d at 1354.

The Court of Federal Claims held, however, that class action tolling is not available in the Court of Federal Claims to allow putative class members to opt into a suit under RCFC 23 after the expiration of section 2501's limitations period.  The court based this holding on what it saw as "two significant differences" between the case before it and American Pipe, Crown, Cork & Seal, and Stone Container.  See Dismissal Order, 86 Fed. Cl. at 93.  First, the court reasoned that, unlike FRCP 23 and CIT Rule 23, RCFC 23 is not statutory.  The court pointed out that, unlike FRCP 23, RCFC 23 was not transmitted to Congress.  Neither, it pointed out, did  28 U.S.C. § 2501 incorporate by reference the rules of the Court of Federal Claims, as the applicable statute of limitations in Stone Container incorporated the rules of the Court of International Trade.  Second, the court stated that, in John R. Sand & Gravel Co. v. United States, 552 U.S. 130 (2008), the Supreme Court defined section 2501 "as being jurisdictional in nature and more absolute and rigid than other statutes of limitation, whereas the statutes of limitation in American Pipe, Crown Cork, and Stone Container have not been characterized in that manner."  Id.  The court emphasized that "John R. Sand & Gravel limits, or even abrogates the ability of the Court of Federal Claims to use any rule of the court . . . to allow putative class members to opt in after the expiration of 28 U.S.C. § 2501."  Id.

The Court of Federal Claims also rejected Appellants' argument that RCFC 15(c) supported amending the complaint to add putative class members to the suit. RCFC 15(c) permits an amendment to a pleading to relate back to the date of the original pleading when the claim "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." RCFC 15(c)(1)(B). The court determined that "the relation-back doctrine cannot be used to revive a class-action claim that is not within the jurisdiction of the Court of Federal Claims." Fauvergue, 85 Fed. Cl. at 59.

Finally, the Court of Federal Claims considered the merits of plaintiffs' class certification motion, and rendered an alternative ruling to its dismissal of the suit. In that ruling, the court determined that the class action plaintiffs had satisfied all four prerequisites for class certification under RCFC 23(a), as well as the two requirements of RCFC 23(b) for establishing that a class action can be maintained.[2] The court thus held that it would have certified the class had it not lacked jurisdiction by reason of the operation of the statute of limitations. Id. at 101. Final judgment dismissing the claims of all named plaintiffs except Ms. Fauvergue was entered on February 27, 2009. Thereafter, Appellants timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(2).

---

[2] The court summarized the requirements of RCFC 23(a) and (b) as follows: (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) superiority (i.e., superiority of a class action to other litigation-management approaches). See Dismissal Order, 86 Fed. Cl. at 95, citing Curry v. United States, 81 Fed. Cl. 328, 332 (2008); Barnes v. United States, 68 Fed. Cl. 492, 494 (2005). The court analyzed each of the elements and found plaintiffs had satisfied all five.

DISCUSSION

I.

Before turning to the contentions of the parties and our analysis, it may be helpful to set forth the pertinent law relating to class actions. In American Pipe, the Supreme Court adopted the principle of "class action tolling." The Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. The Court expressly found that rule "in no way inconsistent" with the proper function of a statute of limitations, because when suit was filed, a defendant would have been notified of the substantive claims and "also of the number and generic identities of the potential plaintiffs" involved in the class action. Id. at 554-555.

American Pipe addressed the post-1966 and close to current-day version of FRCP 23, which had been significantly overhauled from its original 1938 version. As noted, FRCP 23 contemplates an opt-out class-action procedure. Under that procedure, a determination as to whether an action shall be maintained as a class action is made by the court "at an early practicable time" pursuant to FRCP 23(c)(1)(A).[3] Thereafter, potential class members "are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse." 414 U.S. at 549. The prior 1938 version of FRCP 23, which was superseded by the 1966 amendments,

---

[3]    2003 amendments to FRCP 23 changed the "as soon as practicable" formulation, as used at the time of American Pipe, to the "at an early practicable time" current formulation.

involved an opt-in procedure. Under that procedure, a so-called "spurious" class action could be maintained where no determination was needed in advance of final judgment as to which of the potential class members were actual members bound by the judgment, thereby allowing members of the class to await final judgment before deciding whether to participate in the action. Id. at 545-47.

The rule of American Pipe appeared to apply only to purported members of the class who made timely motions to intervene after the trial court denied class certification. However, in Crown, Cork & Seal, the Court extended the rule of American Pipe to all members of the asserted class, including those who subsequently file their own suits, because tolling properly allows class members to "rely on the existence of the suit to protect their rights." 462 U.S. at 350.

In Stone Container, this court was faced with the question of whether the two-year statute of limitations of 28 U.S.C. § 2636(i), which is applicable to suits in the Court of International Trade under 28 U.S.C. § 1581(i), is subject to class action tolling under CIT Rule 23. The court held that it is. The court first explained that the Supreme Court's decisions in "American Pipe and Crown, Cork & Seal were not based on judge-made equitable tolling, but rather on the Court's interpretation of Rule 23." 229 F.3d at 1354. Continuing, the court stated that "[b]ecause '[a]ll laws in conflict with [the Federal Rules of Civil Procedure] shall be of no further force and effect after such rules have taken effect,' 28 U.S.C. § 2072(b), the Federal Rules of Civil Procedure, like the Federal Rules of Criminal Procedure, are 'as binding as any federal statute.'" Id., quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988). The Federal Rules of Civil Procedure were promulgated by the Supreme Court pursuant to statutory authority and

were implicitly adopted by Congress after transmission to Congress in their proposed form. See 28 U.S.C. §§ 2071-2074. In light of this statutory promulgation scheme, the Supreme Court has held that the Federal Rules of Civil Procedure are deemed to have "the force [and effect] of a federal statute." Sibbach v. Wilson & Co., 312 U.S. 1, 13 (1941). The Stone Container court therefore described tolling under FRCP 23 as "statutory." 229 F. 3d at 1354.

Turning to CIT Rule 23, the court acknowledged that, unlike FRCP 23, it is not statutory. The court pointed out, however, that the statute of limitations at issue itself incorporates the rules of the Court of International Trade. Under 28 U.S.C. § 2636(i), an action under 28 U.S.C. § 1581(i) "is barred unless commenced in accordance with the rules of the court within two years after the cause of action first accrues.") Id. (emphasis in opinion). The Stone Container court therefore rejected the government's attempt to distinguish CIT Rule 23 from FRCP 23 "for purposes of American Pipe." Id. The court concluded: "Having determined that [CIT] Rule 23 tolling is statutory rather than equitable, it follows that the rule of American Pipe applies to the government just as it does to private parties, both generally and in this particular case." Id.

In Arctic Slope Native Association, Ltd. v. Sebelius, 583 F.3d 785 (Fed. Cir. 2009), this court again considered the issue of class action tolling against the government. Arctic Slope, which was decided after the decision of the Court of Federal Claims in this case, involved Indian tribes and tribal organizations that had provided health care services to their members under contracts with the Indian Health Service. The contracts were entered into pursuant to the Indian Self Determination and Education Assistance Act ("ISDA"), 25 U.S.C. §§ 450-450n. The case before the court

arose when the Civilian Board of Contract Appeals ("Board") dismissed certain ISDA contract claims by the Indian tribes and tribal organizations because the claims were not presented to the government's contracting officers within six years after the claims accrued, as required by section 605(a) of the Contract Disputes Act ("CDA"), 41 U.S.C. § 605(a). 1988 amendments to the ISDA made the CDA applicable to disputes concerning self-determination contracts.

One of the questions before the <u>Arctic Slope</u> court was whether class action tolling was available with respect to section 605(a)'s limitations period. The government's position was that, by virtue of the ISDA's incorporation of CDA procedures, the temporal scope of the waiver of sovereign immunity was six years, and that any claim not submitted to a contracting officer within that time period was jurisdictionally barred from further review, administrative or judicial. 583 F.3d at 791. The appellant Indian tribes and tribal organizations argued that the six-year presentment period in section 605(a) could be equitably or legally tolled without exceeding the limits on the government's waiver of sovereign immunity. <u>Id.</u> The tribes and tribal organizations based their claim for legal tolling on the fact that they were members of putative classes in either of two earlier-filed suits, the <u>Zuni</u> and <u>Cherokee Nation</u> class actions. They argued that the six-year period for filing their administrative claims under section 605(a) should be tolled until class certification was denied in those cases.

The <u>Arctic Slope</u> court rejected the government's argument that because the six-year time limit in section 605(a) is a condition on the waiver of sovereign immunity, the statute is jurisdictional, and its time period is not subject to class action tolling. The

court stated: "The government's contentions that class action tolling cannot apply to a temporal limitation on actions against the government, and that class action tolling is 'judge-made' rather than statutory . . . have no force in light of Stone Container." Id. The court dismissed the government's attempt to distinguish Stone Container as not involving a "jurisdictional statute of limitations" by explaining that "[t]he limitations statute at issue in Stone Container . . . constituted a waiver of sovereign immunity and thus defined the court's jurisdiction." Id. at 792-93. Ultimately, the Arctic Slope court denied the appellants the benefit of class action tolling. The court did so not because the limitations provision at issue was "jurisdictional" in nature, but rather because the appellants had failed to exhaust their administrative remedies by timely presenting their claims to contracting officers as required by 41 U.S.C. § 605(a). See id. at 794-96. The court thus agreed with the government's "alternative, and narrower," argument that the appellants' failure to present their claims to contracting officers within six years of accrual meant that those claims could not have been litigated in the Zuni and Cherokee Nation class actions even if those suits had been permitted to continue. Id. at 793. The court noted that a claimant who complied with the administrative claim presentment requirements "would be eligible to benefit from classwide relief and would presumably be entitled to class action tolling." Id. at 797.[4]

---

[4]     The court did, however, conclude that the appellants were potentially eligible for equitable tolling. The court reasoned that the Supreme Court's holding in Irwin v. Department of Veterans Affairs, 498 U.S. 89, 95-96 (1990) applied. In Irwin, the Court held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." The Arctic Slope court concluded that "the Irwin presumption applies, which means that we must assume that Congress intended equitable tolling to be available unless there is good reason to believe otherwise." 583 F.3d at 798.

American Pipe, Crown, Cork & Seal, Stone Container, and Arctic Slope outline the framework of class action tolling, as applied both against private parties and against the government. None of these cases, however, addressed class action tolling of the limitations period in 28 U.S.C. § 2501 under RCFC 23. Whether class action tolling is available for opt-in classes in the Court of Federal Claims is an issue of first impression for this court.

II.

The question before us is this:

> When a class action complaint is filed in the Court of Federal Claims within the six-year limitations period of 28 U.S.C. § 2501 by one named plaintiff, are putative class members permitted to opt in under RCFC 23 after expiration of the limitations period, when class certification was sought prior to expiration of the limitations period, but the complaint was not amended to add other named plaintiffs as putative class members until after expiration of the limitations period?

As seen, the Court of Federal Claims answered this question in the negative and dismissed the second amended complaint as to all plaintiffs other than Ms. Fauvergue. We review the court's dismissal for lack of jurisdiction and its underlying legal conclusions without deference. Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1362 (Fed. Cir. 2005); Applegate v. United States, 25 F.3d 1579, 1581 (Fed. Cir. 1994).

Appellants argue first that the Court of Federal Claims erred in dismissing the second amended complaint because the timely filing of a class-action complaint itself commences the action for all persons who eventually opt in to the class. Appellants contend that no tolling issue arises in this case because the initial timely-filed complaint asserted the claims of all similarly situated Missouri and Kansas landowners whose property was subject to the June 21, 2002 NITU and who were subsequently

determined to be members of the class. Thus, in Appellants' view, section 2501 was satisfied for every class member when Ms. Fauvergue filed her complaint on June 12, 2008. See Appellants' Br. 28. In advancing this argument, Appellants point to the statement in American Pipe that "the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs." 414 U.S. at 551.

Appellants' second argument is that the Court of Federal Claims erred by not suspending or tolling the statute of limitations to allow putative class members to opt in to the action. Appellants urge that the fact that RCFC 23 is a procedural rule adopted by the court that cannot extend or limit the jurisdiction of the Court of Federal Claims does not distinguish it from the Federal Rules of Civil Procedure because neither do those rules "extend or limit" any court's jurisdiction; see FRCP 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts."). Appellants contend that the Court of Federal Claims incorrectly extended the John R. Sand & Gravel holding that section 2501 is jurisdictional to proscribe any form of tolling thereunder, i.e., not only equitable tolling but also class action statutory tolling. See Dismissal Order, 86 Fed. Cl. at 91; Appellants' Br. 70, 77-79.

Appellants argue that because the Supreme Court has read FRCP 23 to permit statutory tolling in class actions in federal district court, see, e.g., American Pipe and Crown, Cork & Seal, and because this court has read a corresponding rule (CIT Rule 23) to permit tolling in a class action against the government, see Stone Container, 229 F.3d at 1354, RCFC 23 must operate similarly to permit tolling here. Appellants, along with several amici curiae, namely, National Federation of Federal Employees; Larry J.

Rhutasel et al.; and Klamath Irrigation District et al., contend that if this court does not reverse the decision of the Court of Federal Claims, use of class-action procedures will be effectively eliminated in the Court of Federal Claims. See, e.g., Appellants' Br. at 64-67; National Federation of Federal Employees Br. at 17-19.

Finally, Appellants contend that the Court of Federal Claims erred by failing to acknowledge that, by reason of RCFC 15(a), the second amended complaint relates back to the date of the original complaint for purposes of independently satisfying the limitations period of section 2501. Appellants argue that the original class action complaint identified the same "conduct, transaction, or occurrence" giving rise to the government's liability (the issuance of the NITU) that was specified in the second amended complaint, with the result that Appellants' claims relating to this general fact situation should not be time-barred under section 2501. See Appellants' Br. 86-88.

The government responds that we should affirm the final judgment of the Court of Federal Claims. The government argues first that there is no merit to Appellants' argument that the filing of Ms. Fauvergue's complaint on June 12, 2008, satisfied the statute of limitations as to putative class members and that there thus is no need to reach the question of whether the filing served to toll the limitations period. Characterizing this argument as an attempt to "avoid John R. Sand & Gravel," the government states that, "to the extent that the filing of the opt-out class action complaint in American Pipe 'satisfied' the applicable statute of limitations, it did so because the filing operated to toll the statute of limitations," not satisfy it. See Appellee's Br. 23-24.

Turning next to the issue of tolling, the government posits that, while this court has not yet ruled on whether American Pipe tolling applies to opt-in class actions, the

answer to the question lies in reconciling RCFC 23 and 28 U.S.C. § 2501. Id. at 30. Addressing the question on those terms, the government states first that, in John R. Sand & Gravel, the Supreme Court "reaffirmed that the six-year statute of limitations applicable to Appellants' claims is jurisdictional and not subject to equitable tolling." Id. at 33. The government goes on to endorse the reasoning of the Court of Federal Claims that, although John R. Sand & Gravel does not address statutory class action tolling, its holding "rigidly proscribes any tolling" because of the "absolute nature of the six-year statute of limitations imposed by § 2501." Dismissal Order, 86 Fed. Cl. at 91; Appellee's Br. 19-20.

The government elaborates that American Pipe statutory tolling is inapplicable to section 2501 for several reasons. First, unlike FRCP 23, which was at issue in American Pipe, RCFC 23 is not statutory. According to the government, that is because the procedural rules of the Court of Federal Claims are not transmitted to Congress for review and approval under 28 U.S.C. §§ 2071-74. Therefore, the government reasons, they do not carry the weight of a statute enacted by Congress. At the same time, the government notes that the Court of Federal Claims "cannot, through its acknowledged rule-making power, expand its jurisdiction beyond the limits prescribed by Congress." Rolls-Royce, Ltd. v. United States, 364 F.2d 415, 419 (Ct. Cl. 1966). See Appellee's Br. 33. Second, the government points out that, in contrast to Stone Container, where the relevant statute of limitations incorporated CIT Rule 23, section 2501 does not incorporate RCFC 23. Third, and in the view of the government most importantly, neither American Pipe, Crown, Cork & Seal, nor Stone Container involved a statute of limitations that the Supreme Court had held to be jurisdictional and not subject to tolling.

See Appellee's Br. 34-35. With American Pipe and Crown, Cork & Seal in mind, the government contends that the Supreme Court held tolling available in private actions in federal court because doing so gave effect to the opt-out class action procedure of FRCP 23 in a manner that was "in no way inconsistent with the functional operation" of the statute of limitations at issue. American Pipe, 414 U.S. at 554-555. The government asserts this court used similar reasoning to permit tolling for opt-out class actions in the Court of International Trade in Stone Container. See 229 F.3d at 1353-54; Appellee's Br. 32.

Finally, the government urges us to reject Appellants' reliance on the "relation-back" rule set forth in RCFC 15. Citing Snoqualmie Tribe of Indians v. United States, 372 F.2d 951, 960 (Ct. Cl. 1967), the government states that "[t]he test for determining whether a claim added by an amendment to a complaint after the statute of limitations has expired may be related back to the original pleading to avoid the bar of the statute of limitations is essentially one of notice." Appellee's Br. 44-45. The government argues that the relation-back rule of RCFC 15 is not available to Appellants because, in John R. Sand & Gravel, the Supreme Court made it clear that section 2501 is not the kind of statute of limitations that seeks primarily to protect defendants against stale or unduly delayed claims, but rather is the kind of statute of limitations that "seek[s] to achieve a broader system-related goal, such as . . . limiting the scope of a governmental waiver of sovereign immunity." Id., quoting 552 U.S. at 133.

III.

We first address Appellants' contention that the filing of the original complaint satisfied the limitations requirement of section 2501 outright for all putative members of

the class.  We reject this argument.  We do so because we are not prepared to extend non-class action case law, which permits the filing of a complaint to stop the running of the statute of limitations, see, e.g., Henderson v. United States, 517 U.S. 654, 657 (1996), and FRCP 3 ("a civil action is commenced by the filing of a complaint with the court"), to cover class actions.  It is true that the American Pipe Court stated that "the commencement of the action satisfied the purpose of the limitation provision as to all those who might subsequently participate in the suit as well as for the named plaintiffs." 414 U.S. at 551.  The Court made clear, however, that the means by which the action "satisfied" the limitation provision's purpose was by "tolling" the running of the statute for all purported members of the class.  Id. at 553 ("the commencement of the original class suit tolls the running of the statute for all purported members of the class").  See also Crown, Cork & Seal, 462 U.S. at 350 ("[t]he filing of a class action tolls the statute of limitations . . .") (emphasis added).[5]

Because the Supreme Court chose to describe the appropriate statute of limitations as being "tolled," we have referred to "the tolling rule of American Pipe," Stone Container, 229 F.3d at 1354; Arctic Slope, 583 F.3d at 791-92, and have framed the question to be decided as "whether the limitations period was tolled."  Stone Container at 1352.  We therefore agree with the Court of Federal Claims and the government that section 2501 was not satisfied on its face for all putative class members when Ms. Fauvergue filed her June 12, 2008 class action complaint.

---

[5]    When a court states that a time period is tolled, it means that it abates, or stops the running of, the limitations period in question.  See Black's Law Dictionary 1625 (9th ed. 2009).

IV.

We turn now to the question of tolling. In that regard, as we have seen, the decision of the Court of Federal Claims hinged on two points. First, the court drew a distinction between the opt-out procedure of FRCP 23 and the opt-in procedure of RCFC 23. In the court's view, because RCFC 23 is not statutory and is not incorporated by reference into 28 U.S.C. § 2501, it cannot support the kind of class action tolling scheme applied by the Supreme Court in American Pipe. See Dismissal Order, 86 Fed. Cl. at 89-90. Second, the court stated that section 2501 was viewed by the Supreme Court in John R. Sand & Gravel "as being jurisdictional in nature and more absolute and rigid than other statutes of limitation, whereas the statutes of limitation in American Pipe, Crown, Cork & Seal, and Stone Container have not been characterized in that manner." Dismissal Order, 86 Fed. Cl. at 93. Accordingly, the court concluded that "John R. Sand & Gravel limits, or even abrogates, the ability of the Court of Federal Claims to use any rule of the court, equitable tool, or ameliorative doctrine to allow putative class members to opt in after the expiration of 28 U.S.C. § 2501." Id.

A.

We consider first the difference between the opt-out procedure of FRCP 23 that was at issue in American Pipe and the opt-in procedure of RCFC 23. In American Pipe, the Supreme Court noted that under the prior version of FRCP 23, which embodied an opt-in procedure, there existed a difference of opinion among federal appeals and trial courts as to whether parties should be allowed to join or intervene as members of a "spurious" class after the termination of a limitations period, when the initial class action complaint was filed before the period had run. 414 U.S. at 549. The court observed

that "[a] majority of the courts ruling on the question, emphasizing the representative nature of a class suit, concluded that such intervention was proper." Id.

For example, in York v. Guar. Trust Co., 143 F.2d 503 (2d Cir. 1944), rev'd on other grounds, 326 U.S. 99 (1945), the Second Circuit took the position that the filing of the initial class action complaint, even in a "spurious" class action, commenced the action for the class. The court reasoned that to hold otherwise, and deny potential class members "the benefit, by intervention, of the institution of the suit by plaintiff would be to convert the Rule into a trap." 143 F.2d at 528. Likewise, in Escott v. Barchris Constr. Corp., 340 F.2d 731, 733 (2d Cir. 1965), the court permitted intervention by additional plaintiffs after the statute of limitations had run because the original action had been instituted within the statutory period. The court tolled the statute of limitations "for those in whose behalf the representative action is brought as well as for those who actually bring the action." Id. 733-34 (noting "it is certain that the existence of a representative action which does not have the effect of tolling the statute does constitute a trap."). The minority view, the Supreme Court stated, was that "since a spurious class action was essentially a device to permit individual joinder or intervention, each individual also participating would have to satisfy the timeliness requirement." American Pipe, 414 U.S. at 550.

A split of authority has continued in the wake of American Pipe. In Sperling v. Hoffmann-La Roche, Inc., 24 F.3d 463, 471 (3d Cir. 1994), the Third Circuit applied tolling to opt-in class actions under the Age Discrimination in Employment Act

("ADEA").[6]  The court did so because "application of principles of legal tolling to a class action for age discrimination is . . . consistent with the three basic purposes a statute of limitations serves."[7]  The contrary view is exemplified by <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086 (11th Cir. 1996).  There, the Eleventh Circuit reasoned that tolling should not apply to plaintiffs suing under the ADEA, because "opt-in plaintiffs commence an ADEA civil action, not when the Complaint is filed, but when the putative plaintiff files a written consent to opt into the class action."  <u>Id.</u> at 1105.

Viewing the split of authority both pre- and post-<u>American Pipe</u>, we find ourselves in agreement with the courts holding that class action tolling is available under an opt-in scheme.  In our view, such a result is most consistent with the objectives which class action procedures are meant to achieve.  <u>See, e.g.</u>, <u>Crown, Cork & Seal</u>, 462 U.S. at 361 (reasoning that if the statute of limitations were not tolled by the filing of a class action, "[t]he result would be a needless multiplicity of actions—precisely the situation that [FRCP] 23 and the tolling rule of <u>American Pipe</u> were designed to avoid."); <u>see also</u>, Escott, 340 F.2d at 733 (stating that the "obvious desirability of avoiding a multiplicity of actions turns us toward favoring the representative suit and encouraging its use."); <u>Basch v. Ground Round, Inc.</u>, 139 F.3d 6, 10 (1st Cir. 1998) ("[i]n <u>American</u>

---

[6]  The ADEA borrows the opt-in class action procedure of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 <u>et seq</u>.  24 F.3d at 464.  The court noted that the relevant statutory provision states that an opt-in class member's claim for relief under the FLSA "does not commence until the date the opt-in member's written consent to join the representative action is filed."  <u>Id.</u>, <u>citing</u> 29 U.S.C. § 256.

[7]  The court identified the "three basic purposes" of a statute of limitations as, first of all, a "practical and pragmatic device[ ] to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost."  Secondly, limitations periods "put defendants on notice of adverse claims," and thirdly, they "prevent plaintiffs from sleeping on their rights."  <u>Id.</u> at 471-472 (quotations and citations omitted).

Pipe the Supreme Court balanced the policies served by the class action rule, [FRCP] 23, and the policies served by the statute of limitations."). In short, we think that, all other considerations being equal, the laudable goal of avoiding "multiplicity of actions" should prevail.

B.

As noted, however, the government urges that, unlike FRCP 23, which was at issue in American Pipe, RCFC 23 is not statutory and cannot carry the force of law. And the government notes that the Court of Federal Claims cannot, through its procedural rules, expand its jurisdiction. See supra Rolls-Royce, 364 F.2d at 419.

RCFC 23 was promulgated in accordance with the authorization of Congress. 28 U.S.C. § 2503 vests the Court of Federal Claims with the authority to prescribe rules of procedure governing the conduct of cases in the court, which cases include class actions. See 28 U.S.C. § 2503(b). "[U]nlike the United States district courts, which lack the power to promulgate their own rules . . . Congress authorized the Claims Court [the predecessor of the Court of Federal Claims] to adopt its rules without the need for supervisory or statutory oversight." M.A. Mortenson Co. v. United States, 996 F.2d 1177, 1183 (Fed. Cir. 1993). In M.A. Mortenson, we observed that "[i]t is well established that a court's procedural rules promulgated pursuant to statutory authorization are deemed to have the force and effect of law." 996 F.2d at 1183-84. We also addressed the authority of the Court of Federal Claims' predecessor to promulgate its rules in Wood-Ivey Sys. Corp. v. United States, 4 F.3d 961 (Fed. Cir. 1993). In that case, we rejected the government's contention that Claims Court Rule 6(a), dealing with the computation of time, could not apply to the statutory period for

filing a claim under the CDA in the Claims Court. See 41 U.S.C. § 609(a). We stated that "Claims Court Rule 6(a) was enacted in accordance with the authorization of Congress to promulgate rules of procedure. It is an official rule on which the court and the public must rely." Id. at 964.

When, in Stone Container, we accorded CIT Rule 23 tolling force, and applied it against the government, we relied on the fact that the statute of limitations at issue incorporated the court's procedural rules. 229 F.3d at 1354. The Stone Container court did not speak to the question of whether the court's rules still would have been given such force if they had not been so incorporated, but instead had been promulgated under authority given by Congress. The M.A. Mortenson court did speak to this question, however. In reviewing a grant of sanctions against the government under RCFC 37, we explained that the court's procedural rules "have the same force and effect as if expressly included in the statute," and that that force is "only strengthened when the rule in question specifically adopts its corresponding FRCP." M.A. Mortenson, 996 F.2d at 1184 (emphasis added). In M.A. Mortenson we rejected the government's argument that the court lacked jurisdiction to enforce its own rules of procedure, finding "no basis on which to differentiate between the abilities of the federal district courts and the Court of Federal Claims to [enforce a rule] against the United States pursuant to either the FRCP or the [RCFC]." Id.

Stone Container's holding that the filing of a class action complaint under CIT Rule 23 can toll the limitations period of 28 U.S.C. § 2636(i), combined with the Court of Federal Claims-specific teaching of M.A. Mortenson, instructs us to permit the filing of a class action complaint in the Court of Federal Claims to toll the limitations period of 28

U.S.C. § 2501. Permitting such tolling comports with the proposition that the rules of the Court of Federal Claims, which are promulgated pursuant to statutory authorization, "are deemed to have the force and effect of law." M.A. Mortenson, 996 F.2d at 1183. It also comports with the logical goal of having class action procedures in the Court of Federal Claims operate in a manner consistent with the American Pipe rationale for class actions. See American Pipe, 414 U.S. at 555 ("insur[ing] effectuation of the purposes of litigative efficiency and economy" while giving defendants "the essential information necessary to determine both the subject matter and size of the prospective litigation"). By contrast, prohibiting tolling under RCFC 23 in this case would not serve the purposes of the class action rule. Instead, it would eliminate class actions in the Court of Federal Claims in instances where suit was filed, and class certification was sought, before the expiration of section 2501's limitations period, but the putative class was not certified before the period expired. This would increase the likelihood of multiplicity of suits.

## C.

The government candidly acknowledges the authority of Stone Container, M.A. Mortenson, and Wood-Ivey. It argues that these cases do not help Appellants, however, because they did not involve 28 U.S.C. § 2501 and were decided prior to John R. Sand & Gravel. As seen, John R. Sand & Gravel was the linchpin of the decision of the Court of Federal Claims. The court was of the view that John R. Sand & Gravel "rigidly proscribes any tolling" because of the "absolute nature of the six-year statute of limitations imposed by § 2501." Dismissal Order, 86 Fed. Cl. at 91.

As this court recently noted en banc, "[t]he issue in John R. Sand & Gravel was narrow. The Supreme Court stated: 'The question presented is whether a court must raise on its own the timeliness of a lawsuit filed in the Court of Federal Claims, despite the [g]overnment's waiver of the issue.'" Henderson v. Shinseki, 589 F.3d 1201, 1217 (Fed. Cir. 2009) (en banc), quoting John R. Sand & Gravel, 552 U.S. at 132. The Supreme Court held in John R. Sand & Gravel that section 2501 requires such sua sponte consideration, thereby affirming the decision of this court "to ignore the [g]overnment's waiver and to decide the timeliness question." Id. at 133. In so holding, the Court reasoned that section 2501 is a "jurisdictional" statute of limitations of the type that "forbids a court to consider whether certain equitable considerations warrant extending a limitations period." Id. at 134. John R. Sand & Gravel did not address the question before us. That question is whether section 2501's limitations period is non-equitably tolled for putative class members under RCFC 23 when a class action complaint is filed, and class certification is sought, prior to the expiration of the limitations period.

In Arctic Slope, we rejected "the government's sweeping contention that any time limitation . . . which defines the matters that a board or court may adjudicate . . . is not subject to class action tolling because that provision is 'jurisdictional' in nature." 583 F.3d at 793. So too here, we reject the notion that John R. Sand & Gravel "rigidly proscribes" class action statutory tolling of section 2501. See Dismissal Order, 86 Fed. Cl. at 91.

In our view, the fact that equitable tolling is barred under section 2501 does not mean that class action statutory tolling also is barred. The two concepts are different.

Equitable tolling is a principle that permits courts to modify a statutory time limit and "extend equitable relief" when appropriate. See Irwin, 498 U.S. at 96 (describing the range of instances in which courts have applied the equitable tolling doctrine); see also, Hallstrom v. Tillamook County, 493 U.S. 20, 27 (1989) (a "traditional equitable tolling principle" should not be applied to a statutory limitations period when "the equities do not weigh in favor of modifying statutory requirements"). Class action statutory tolling, on the other hand, does not modify a statutory time limit or "extend equitable relief." Rather, it is a procedure that suspends or tolls the running of the limitations period for all purported members of a class once a class suit has been commenced, in a manner consistent with the proper function of a statute of limitations. See Arctic Slope, 583 F.3d at 791 (statutory class action tolling principles permit "the statute of limitations [to be] suspended during the pendency of the class action proceedings").

By the same token, RCFC 23, which has "the force and effect of law," see M.A. Mortenson, 996 F.2d at 1183, does not modify a statutory time limit or "extend equitable relief." Its procedures can only come into play once a class action complaint has been filed within the section 2501 limitations period. Neither does tolling of the limitations period under RCFC 23 turn on "equities," because such tolling is not triggered by equitable considerations. See, e.g., Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) (equitable considerations apply where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part); Glus v. Brooklyn Eastern Dist. Terminal, 359 U.S. 231, 235 (1959) (equitable considerations apply when plaintiff was intentionally misled by defendant into letting filing period lapse); Klehr v. A.O. Smith Corp., 521 U.S. 179, 194 (1997) (equitable tolling warranted when a

plaintiff does not know of a defendant's fraudulent activity and defendant affirmatively conceals the activity). RCFC 23 tolling, on the other hand, serves to facilitate the objectives of the class action procedure. See, e.g., American Pipe, 414 U.S. at 553, 558 ("the efficiency and economy of litigation . . . is a principal purpose of the [class action] procedure"). In sum, we are not persuaded by the government's argument that allowing class action tolling in this case would be contrary to the statement of the Supreme Court in John R. Sand & Gravel that 28 U.S.C. § 2501 is "jurisdictional."

Moreover, this is not a case in which section 2501's limitations period was not satisfied. Ms. Fauvergue filed her class action complaint prior to the expiration of section 2501's six-year period. In addition, she moved for class certification prior to the expiration of the limitations period. While it is true that no individuals other than Ms. Fauvergue were named in the original complaint, we are unwilling to hold that that fact results in section 2501 operating as a bar to their opting in to the action. Such a holding would create a regime in which prospective class action plaintiffs would be charged with the task of forecasting when, during the pendency of a class action proceeding, the class certification process and opt in period would be completed so that section 2501 would be satisfied. See Arctic Slope, 583 F.3d at 791 (noting "it is unknowable at the time a class action is filed whether the class will be certified"); Sperling, 24 F.3d at 467 (describing the practical problems that would ensue if tolling were not permitted in opt-in class actions). It also would place on the court the burden of timing class certification and implementing opt-in procedures in such a way as to make sure that the limitations period was met. This would be virtually impossible in cases such as this, where suit was filed late in the period. See, Brief of Amici Curiae Larry J. Rhutasel et al. at 11-12

(unintentional procedural delays in ruling on class certification would terminate putative class members' claims if tolling did not permit putative members to opt in to a representative suit after the statute of limitations had run).

Such a holding also would create an anomalous difference between the conduct of class action litigation under the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Little Tucker Act, 28 U.S.C. § 1346(a)(2). While the Tucker Act gives exclusive jurisdiction to the Court of Federal Claims for claims over $10,000, the Little Tucker Act provides federal district courts with jurisdiction, concurrent with the Court of Federal Claims, for claims against the government below $10,000. As the Court of Federal Claims acknowledged in its Dismissal Order, 86 Fed. Cl. at 88, if section 2501 is not subject to class action tolling, a situation can exist where one class-action complaint, filed under FRCP 23 and 28 U.S.C. § 2401[8] in federal district court under the Little Tucker Act, can cover the putative class, while the same class-action complaint, filed under RCFC 23 and section 2501 in the Court of Federal Claims, cannot provide jurisdiction over the identical putative class members.

In this respect, we would be creating a regime in which the class action process in the Court of Federal Claims was not just different from the class action process in federal district court (opt-in versus opt-out), but was also so cumbersome and unwieldy in its operation that, unlike the process in district court, it frustrated the purpose of avoiding multiplicity of suits. Supreme Court precedent strongly suggests that such a result, i.e., one in which jurisdictional differences dictate different outcomes in the law, is

---

[8] Section 2401 states, in relevant part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

not favored.  See, e.g., Dickinson v. Zurko, 527 U.S. 150, 165 (1999) (holding that the Federal Circuit should not accord less deference to factual findings of the Patent and Trademark Office than courts accord to the findings of other agencies under the Administrative Procedure Act); eBay Inc. v. MercExchange LLC, 547 U.S. 388, 390-91 (2006) (holding that application of equitable principles in evaluating requests for permanent injunctions under the Patent Act should not differ from treatment of permanent injunctions in other fields of law); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 139-140 (2007) (holding that the standard for assessing whether a justiciable controversy exists should not be more stringent in lawsuits seeking a declaration of patent invalidity or noninfringement than in non-patent fields).

Finally, we agree with the reasoning of the predecessor of the Court of Federal Claims in Barbieri v. United States, 15 Cl. Ct. 747 (1988).  Barbieri involved a Tucker Act suit in the Claims Court by customs agents working in Key West, Florida.  The National Treasury Employees Union, together with five named individuals, filed a class action complaint asserting that members of a class of customs agents were entitled to extra compensation for performing temporary boarding officer services to assist in searches for Cuban refugees, for the processing of refugees, and for the enforcement of related immigration laws, all of which they had undertaken in the spring of 1980.  Id. at 748.  The complaint, filed "in the waning months of [section 2501's] limitations period," stated that suit was being brought on behalf of a class potentially in excess of 80 individuals.  Id. at 749.

The court denied class certification in 1988.  Following denial of class certification, suit was filed by thirteen unnamed members of the class on whose behalf

class certification had previously been sought. Id. That suit was filed after the limitations period had run. Accordingly, the court stated that the action was "clearly time-barred unless . . . the running of the limitations period was tolled for the period that the motion for class certification remained pending before the court." Id. Addressing the question, the court rejected the government's argument that the second suit was barred by the statute of limitations, allowing class action tolling for the period that the motion for class certification remained pending before the court in the first suit. Id. at 749-50.

Significantly, the Claims Court arrived at its decision even though it agreed with the government that "governing case law insists upon a strict construction of the court's statute of limitations." Id. at 752. For this rule, the court cited Soriano v. United States, 352 U.S. 270, 276 (1957). The Court in John R. Sand & Gravel reaffirmed the authority of Soriano. 552 U.S. at 136-37. Thus, although Barbieri was decided prior to John R. Sand & Gravel, it proceeded under the same premise as that decision—that 28 U.S.C. § 2501 is jurisdictional. We agree with Barbieri that allowing class action tolling "does not involve [the court's] power to 'liberalize' the statute of limitations but rather its power to avoid a multiplicity of suits through a representative action." Barbieri, 15 Cl. Ct. at 752, citing Western Cherokee Indians v. United States, 27 Ct. Cl. 1, 54 (1891); aff'd sub nom, United States v. Old Settlers, 148 U.S. 427, 479-80 (1893).

D.

Accordingly, we answer as follows the question of first impression presented in this case. When, as here, a class action complaint is filed within the six-year limitations period of 28 U.S.C. § 2501 as to one named plaintiff, putative class members are

permitted to opt in under RCFC 23 after expiration of the limitations period, when class certification is sought prior to expiration of the period, but the complaint is not amended to add other named plaintiffs as putative class members until after expiration of the period.[9] The statute of limitations is tolled during the period the Court of Federal Claims allows putative class members to opt in to the class.[10] Thus, when a class action complaint is filed and class certification is sought prior to the expiration of section 2501's limitations period, the limitations period is subject to class action tolling during the period the court allows putative plaintiffs to opt in to the class.

## CONCLUSION

For the reasons set forth above, we hold that the running of the six-year limitations period of 28 U.S.C. § 2501 was tolled for all putative members of the opt-in class in this case. We therefore reverse the Court of Federal Claims' dismissal of the second amended complaint as to all plaintiffs other than Ms. Fauvergue. We remand the case for proceedings on the merits of Appellants' taking claims.[11] Based upon our disposition of this appeal, it is not necessary for us to address the question of whether section 2501's limitations period was satisfied through relation-back under RCFC 15.[12]

---

[9] We leave for another day the question of whether tolling would be allowed where class certification was sought after expiration of the limitations period.

[10] Under RCFC 23, the Court of Federal Claims directs to individual class members the best notice that is practicable under the circumstances and that clearly and concisely states, inter alia, "the time and manner for requesting inclusion." RCFC 23 (c)(2)(B)(vi).

[11] If, after receiving the views of the parties, the Court of Federal Claims determines that there are additional putative class members who should be given the opportunity to opt in to the suit, it can, consistent with this opinion, fashion an appropriate procedure under RCFC 23.

[12] As to the Court of Federal Claims' ruling that the requirements for class action certification were met, we let it stand at this point. We agree that the government

COSTS

No costs.

<u>REVERSED</u> and <u>REMANDED</u>

---

correctly did not seek to challenge the class certification ruling in this appeal. <u>See</u> <u>Praxair, Inc. v. ATMI, Inc.</u>, 543 F.3d 1306, 1322 (Fed. Cir. 2008) ("[a]s we have repeatedly explained, a party lacks standing to cross-appeal unless it is adversely affected by the judgment it seeks to challenge"). The government is not precluded from appealing the certification ruling at a later date if circumstances warrant and it chooses to do so.