**GENEVA ROCK PRODUCTS, INC., on its behalf and on behalf of a class of others similarly situated, Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**No. 08–920L.**

United States Court of Federal Claims.

Sept. 15, 2011.

J. Robert Sears, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, MO, for plaintiff. With him on the briefs were Brent W. Baldwin, Steven M. Wald, Thomas S. Stewart, Elizabeth G. McCulley, and Anne E. Baggott, Baker Sterchi Cowden & Rice, L.L.C., St. Louis, MO, and Kansas City, MO.

E. Barrett Atwood, Trial Attorney, Natural Resources Section, Environmental and Natural Resources Division, United States Department of Justice, San Francisco, CA, for defendant. With him on the briefs was Ignacia S. Moreno, Assistant Attorney General, Environmental and Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

 Before the court is the plaintiff's motion to certify a class action pursuant to Rule 23 of the Rules of the Court of Federal Claims ("RCFC") in this "rails-to-trails" case focused on a relatively short, now-abandoned 3.23–mile "Provo Industrial Lead" rail line in Salt Lake and Utah Counties, Utah. Plaintiff, Geneva Rock Products, Inc. ("Geneva Rock"), alleges that it owns land subject to the rail easement and consequently that the trails designation caused a taking of its property under Section 208 of the National Trails System Act Amendments of 1983, Pub.L. No. 98–11, § 208, 97 Stat. 42, 48 (codified at 16 U.S.C. § 1247(d)) ("Trails Act"). The proposed class would consist of the named plaintiff and other landowners who own reversionary rights to the line previously used as a railroad. Compl. ¶¶ 14–15; Pl.'s Mem. in Support of Mot. to Certify Class Action at 3 ("Pl.'s Mem."). The government opposes the motion, arguing that (1) the statute of limitation bars the claims of all putative class members, excepting the named plaintiff, Geneva Rock, and (2) the proposed class does not satisfy the prerequisites of RCFC 23. Def.'s Resp. to Pl.'s Mot. to Certify Class Action at 1 ("Def.'s Opp'n").[1]

## BACKGROUND[2]

Geneva Rock owns real estate that underlies or abuts the abandoned railroad right-of-way. Compl. ¶ 4. Built in the 1870s, this railway eventually came under the ownership of the Union Pacific Railroad Company ("Union Pacific"). On January 17, 2002, Union Pacific sold the physical assets of the railway to the Utah Transit Authority ("Utah Transit"), retaining an easement to conduct freight rail operations on the line. Pl.'s Mem. Ex. A, at 00005. In November 2002, Union Pacific filed a notice of exemption with the Surface Transportation Board ("STB" or "Board"), to allow Union Pacific to abandon

---

1. No defense based upon the applicable statute of limitations, 28 U.S.C. § 2501, is stated in the government's answer to the complaint. Nonetheless, the court has an independent obligation to determine whether the statute of limitations applies to bar any claims. *See John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (holding that 28 U.S.C. § 2501 requires *sua sponte* consideration of the timeliness of a suit even in the face of a waiver by the government).

2. The court derives the background from plaintiff's complaint and the exhibits appended to Geneva Rock's supporting memorandum and to the government's opposition, especially those related to proceedings before the Surface Transportation Board addressing the rail abandonment at issue in this case.

its remaining interest in the rail line. *Id.* at 00003. In December of the same year, Utah Transit requested the issuance of a Notification of Interim Trail Use ("NITU") from the Board, so that it could negotiate with Union Pacific to acquire its interest in the rail line. Pl.'s Mem. Ex. B, at 1–2. The Board issued the NITU on December 31, 2002,[3] Compl. ¶ 6, and on or about March 13, 2003, Union Pacific and Utah Transit reached an agreement for trail use of the rail line, Compl. ¶ 7.

Just short of six years later, on December 30, 2008, Geneva Rock filed suit, alleging an uncompensated taking of its property contravening the Fifth Amendment. The complaint's caption identifies the named plaintiff as acting "For [Itself] and As Representative[ ] of a Class of Similarly Situated Persons." Compl. at 1. The complaint contains two counts. In the first count, Geneva Rock alleges that the government effected a taking by issuing a NITU for a railway that lay across its property. Compl. ¶¶ 3–13. In the second count, Geneva Rock requests certification of a class consisting of adversely affected residuary landowners, claiming that the proposed class meets all of the requirements of Rule 23 of the Federal Rules of Civil Procedure. Compl. ¶¶ 14–16 and the prayer.[4] In neither count, however, did Geneva Rock indicate the number or identity of the putative class members.

On May 7, 2009, the parties jointly requested that the case be stayed pending the appeal of *Fauvergue v. United States*, 86 Fed.Cl. 82 (2009), in the Federal Circuit. The trial court in *Fauvergue* had held that putative class members were barred from opting into a class after the statute of limitations ran on their claim, even if the pertinent class-action complaint was filed before the statute of limitations expired. *Id.* at 93. The parties recognized that the Federal Cir-

cuit's decision in that case could prove to be dispositive of Geneva Rock's request for class certification. A stay accordingly was entered on June 16, 2009. Subsequently, on May 3, 2010, the Federal Circuit reversed the *Fauvergue* trial court's dismissal of the class action claims, *sub nom. Bright v. United States*, 603 F.3d 1273 (Fed.Cir.2010), holding that when a class action complaint is filed that seeks class certification prior to the expiration of the limitations period, that "period is tolled during the [time] the court allows potential class members to opt in to the class." *Id.* at 1274.

Promptly thereafter, on May 14, 2010, the court lifted the stay in this case and ordered Geneva Rock to file a motion for class certification. Such a motion was filed on June 2, 2011, and was opposed by the government primarily on the grounds that Geneva Rock's motion was not supported by sufficient evidence, that the putative class is not so numerous that joinder is impractical, and that Geneva Rock did not establish that its claim would be common or typical of the class. Def.'s Opp'n at 10, 20. The government secondarily contended that the claims of the putative class members were time barred because class certification was not sought prior to the expiration of the limitations period. *Id.* at 22. The court held a hearing on the motion for class certification on August 8, 2011. At the hearing, the government contended that the Supreme Court's recent decision in *Wal–Mart Stores, Inc. v. Dukes*, —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011), requires this court to address the merits of the takings claim in considering the plaintiff's motion for class certification and especially in resolving the dispute over tolling of the limitations period. In light of that argument, the court requested supplemental briefing from the parties to consider the government's contentions based on *Wal–*

**3.** Both parties have stated that the date of the taking was December 30, 2002, the day the STB decided to permit negotiations between Union Pacific and Utah Transit. *See* Pl.'s Mem. at 10; Def.'s Opp'n at 7. In fact, the taking actually occurred the following day, when the NITU was issued. *See* Pl.'s Mem. Ex. B, at 1 (listing the service date as December 31, 2002); *Bright v. United States*, 603 F.3d 1273, 1276 (Fed.Cir. 2010) ("[T]he NITU publication date is the date on which the six-year limitations period of 28

U.S.C. § 2501 begins to run for a taking claim under the Trails Act.")

**4.** RCFC 23 governs class actions in this court. Though identical in many respects to Fed. R.Civ.P. 23, RCFC 23 contains several important differences discussed *infra*. However, none of these differences are relevant to the contents of Geneva Rock's complaint.

*Mart* in more detail. Illumined by the parties' supplemental briefs, the question of class certification is ripe for disposition.

## STANDARDS FOR DECISION

In this court, class actions are governed by RCFC 23. This rule closely tracks the language of its analogue in the Federal Rules of Civil Procedure, and consequently this court has often looked to cases applying Fed. R.Civ.P. 23 to interpret RCFC 23. *See, e.g., Barnes v. United States,* 68 Fed.Cl. 492, 494 n. 1 (2005). Despite the general symmetry between the two rules, they differ in several critical respects. These distinctions will be addressed *infra* in some detail.

■ Under RCFC 23, the criteria for a class action are as follows:

(a) Prerequisites. One or more members of a class may sue as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. A class action may be maintained if RCFC 23(a) is satisfied and if:

. . .

(2) the United States has acted or refused to act on grounds generally applicable to the class; and

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by class members; . . . and

(D) the likely difficulties in managing a class action.

RCFC 23(a), (b). These requirements have been summarized as (1) numerosity, (2) commonality, (3) typicality, (4) adequacy, and (5) superiority. *See, e.g., Haggart v. United States,* 89 Fed.Cl. 523, 530 (2009); *Barnes,* 68 Fed.Cl. at 494. The party seeking class certification bears the burden of proving, by a preponderance of the evidence, that each of these requirements are satisfied. *Filosa v. United States,* 70 Fed.Cl. 609, 615 (2006).

A trial judge must subject a motion for class certification to "rigorous analysis" to ensure that the moving party carries its burden of proof. *Wal–Mart,* 131 S.Ct. at 2551 (quoting *General Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)) (applying Fed.R.Civ.P. 23). In some instances, this analysis will require a trial judge to "touch[ ]" preliminarily the merits of the case. *Id.* at 2552 (citing *Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 676–77 (7th Cir.2001) (Easterbrook, J.)). This result may be inevitable when the class determination "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 2552 (quoting *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364).

Although the moving party bears the burden of proof, in previous cases this court has followed the pattern of the district courts in construing its Rule 23 liberally—"or, at least, not narrowly"—in favor of class certification. *Barnes,* 68 Fed.Cl. at 502. This mode of application acknowledges that RCFC 23 is ultimately a procedural technique aimed at improving "judicial economy and efficiency." *Singleton v. United States,* 92 Fed.Cl. 78, 82 (2010); *see also Bright,* 603 F.3d at 1285 ("[A]ll other considerations being equal, the laudable goal of avoiding 'multiplicity of actions' should prevail.") (quoting *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 351, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983)).

## ANALYSIS

The parties have raised two questions for the court. The first is whether 28 U.S.C. § 2501 would prevent the putative class members from opting into this lawsuit. In addressing this issue, the court is guided by the recent opinion in *Bright*, 603 F.3d 1273. If the court finds that the statute of limitations does not bar the putative class members from participating, then it must resolve the second question: whether the plaintiff has demonstrated, by a preponderance of the evidence, that the purported class satisfies the requirements of RCFC 23 such that the class may be certified.

### A. Sufficiency of the Class–Action Complaint to Toll the Statute of Limitations for the Opt–In Period

In *Bright*, Ms. Earleen Fauvergue had filed a class-action complaint shortly before the expiration of the six-year statute of limitations. 603 F.3d at 1276; *see* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). She filed a motion for class certification six days later. *Id.* The statute of limitations expired before that motion was fully briefed and before any of the putative class members opted in. *Id.* at 1277. The trial court held that 28 U.S.C. § 2501 prevented the putative class members from participating in the suit, *id.*, but the Federal Circuit reversed. The court of appeals held that "when a class action complaint is filed and class certification is sought prior to the expiration of section 2501's limitations period, the limitations period is subject to class action tolling during the period the court allows putative plaintiffs to opt in to the class." *Id.* at 1290.

As the government is quick to point out, the facts of the present case are not identical to those of *Bright*. *See* Def.'s Opp'n at 23–24. In *Bright*, the named plaintiff filed a motion for class certification prior to the expiration of the statute of limitations. 603 F.3d at 1276. Geneva Rock filed its complaint seeking class certification before the statute of limitations ran but filed its motion

to certify well afterward, in part due to the stay of the case that had been granted pending resolution of the appeal in *Bright*. In deciding what to make of this discrepancy, the court takes into account the reasoning of a recent opinion that tackled this very issue. *See Toscano v. United States*, 98 Fed.Cl. 152 (2011).

In *Toscano*, as in this case, the named plaintiffs filed a timely class-action complaint but did not submit a motion for class certification until after the statute of limitations had run. 98 Fed.Cl. at 153. The trial court applied the holding of *Bright*, which tolled the statute of limitations when "class certification is *sought* prior to the expiration of the section 2501 limitations period." *Id.* at 154 (quoting *Bright*, 603 F.3d at 1274 (emphasis added)). It reasoned that, in the case before it, the plaintiffs' complaint "explicitly request[ed] certification of the class." *Id.* at 153–54 (internal quotation marks omitted). Consequently, the later filing of the motion for class certification was inconsequential; the statute of limitations period was tolled from the date of the complaint. *Id.* at 155.

■ This court finds the logic of *Toscano* persuasive. Although the decision in *Bright* mentions the submission of plaintiff's motion to certify the class, it focuses on when the plaintiff actually informed the court (and defendant) that it sought class certification by filing a properly-worded complaint. Indeed, as the *Toscano* opinion points out, RCFC 23 does not by its terms refer to—let alone require—a motion for class certification. 98 Fed.Cl. at 154–55. "The clear implication is that the court may certify or deny the class on the basis of the complaint." *Id.* Thus, *Bright*'s tolling of the statute of limitations was contingent not on a motion for class certification, but rather on the plaintiff's seeking class certification which may be done through class-action allegations in a complaint.

The government, anticipating that the court might adopt *Toscano*'s reasoning, argues that Geneva Rock's complaint lacks sufficient detail to warrant class-action tolling. Def.'s Opp'n at 28–29. In its brief and at the hearing, the government contended that the Supreme Court's holding in *Wal–Mart* sets a

high bar for class certification and the plaintiff's complaint does not overtop that bar. *See id.* at 29 (citing *Wal–Mart*, 131 S.Ct. at 2551). Addressing this argument requires an examination not only of the decision in *Wal–Mart*, but also of the relatively subtle differences in class actions under the Federal Rules of Civil Procedure and the Rules of the Court of Federal Claims.

*Wal–Mart* was an employment-discrimination case that dealt with "one of the most expansive class actions ever," encompassing approximately 1.5 million current and former female employees of the retail giant. 131 S.Ct. at 2547. The class was certified under Fed.R.Civ.P. 23(b)(2), *id.* at 2549, reflecting claims for injunctive and declaratory relief as well as damages in the form of backpay, *id.* at 2548. The Supreme Court held that class certification was improper because the class failed to satisfy the criteria of Rule 23(a)(2) and Rule 23(b)(2). *Id.* at 2556–57.

In so ruling, the Court emphasized that lower courts must engage in a "rigorous analysis" to determine whether the prerequisites for a class action have been met. *Wal–Mart*, 131 S.Ct. at 2551 (quoting *Falcon*, 457 U.S. at 161, 102 S.Ct. 2364). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* The Court acknowledged that, in probing a party's adherence to Rule 23, a trial court may need to "touch[ ] aspects of the merits." *Id.* at 2552 (citing *Szabo*, 249 F.3d at 676–77).

Upon applying the requisite analysis, the Supreme Court found that the certified class in *Wal–Mart* lacked commonality. 131 S.Ct. at 2554–57. Fed.R.Civ.P. 23(a)(2) requires "questions of law or fact common to the class," such that there is a "common contention ... that is capable of classwide resolution," 131 S.Ct. at 2551. In *Wal–Mart*, the plaintiffs failed to present a "common contention" that would unite all their employment-discrimination claims. *See id.* at 2554. Indeed, they succeeded only in supporting an allegation that the defendant had a "policy of *allowing discretion* by local supervisors over employment matters[, which] is just the opposite of a uniform employment practice that would provide the commonality needed for a class action." *Id.* (internal quotation marks omitted).

The Supreme Court further held that the class was improperly certified under Fed. R.Civ.P. 23(b)(2). *Wal–Mart*, 131 S.Ct. at 2557. A class qualifies under that particular subparagraph if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed.R.Civ.P. 23(b)(2). Thus, the ambit of Fed.R.Civ.P. 23(b)(2) is limited to classes whose primary redress is equitable relief; "it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." 131 S.Ct. at 2557. Rather, "individualized monetary claims belong in Rule 23(b)(3)." *Id.* at 2558. The Court held that the *Wal–Mart* plaintiffs' request for backpay exceeded the scope of Fed.R.Civ.P. 23(b)(2). *Id.*

*Wal–Mart* raises the bar for certain types of class certifications, but it is somewhat inapposite in the context of Geneva Rock's takings claim. First, the chief concern in the *Wal–Mart* decision was the justiciability of the class action—an issue that is not present in the instant case. The deficiencies in the Wal-Mart class certification went to the core of whether a court would be able to adjudicate the disputes encompassed by the sprawling putative class. *See* 131 S.Ct. at 2552 ("Without some glue holding the alleged *reasons* for all [defendant's employment] decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*"). The plaintiffs failed to show "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L.Rev. 97, 131–32 (2009)).

No similar concern over justiciability looms in the present case. As spare and lean as Geneva Rock's complaint is, it nonetheless articulates a "common contention ... capable of classwide resolution [that] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart*, 131 S.Ct. at 2551. It presents a single justiciable claim—*i.e.*, that the putative class members all owned a reversionary interest in land encumbered by an easement, which land allegedly would have been theirs but for the government's intervention. Although the merits of this claim have yet to be reached, there is little question as to justiciability.

The second part of *Wal–Mart*'s holding, that classes certified under Fed.R.Civ.P. 23(b)(1) must seek primarily equitable relief, is also inapt here because of the differences between Fed.R.Civ.P. 23(b) and RCFC 23(b). Under the Federal Rules of Civil Procedure, a class action may be maintained if it meets any one of three criteria enumerated in Rule 23(b). By contrast, the Rules of the Court of Federal Claims create a *single* condition under which a class action may be maintained, *i.e.*, where:

> (1) [not used]; (2) the United States has acted or refused to act on grounds generally applicable to the class; *and* (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior or to other available methods for fairly and efficiently adjudicating the controversy.

RCFC 23(b) (emphasis added). In essence, RCFC 23 fuses together the (b)(2) and (b)(3) classes, which are distinct and separate options under the Federal Rules of Civil Procedure. In joining these two classes, this court's Rules Committee dropped the requirement in Fed.R.Civ.P. 23(b)(2) that a class action seek "final injunctive relief or corresponding declaratory relief." This omission is in keeping with this court's jurisdiction, which primarily concerns claims for "liquidated or unliquidated damages" against the United States, 28 U.S.C. § 1491(a)(1), with equitable relief allowed only in expressly specified instances, *see, e.g.*, 26 U.S.C. § 6331(i); 28 U.S.C. §§ 1491(a)(2),

1491(b)(2), 1507, 1508; *see also Beard v. United States*, 99 Fed.Cl. 147 (2011); *Schlabach v. United States*, 97 Fed.Cl. 232, 234 & n. 5 (2011); *Infiniti Info. Solutions, LLC v. United States*, 93 Fed.Cl. 699, 702–03 & nn. 2–5 (2010).

These differences result in a circumscribed scope for the "rigorous analysis" called for in *Wal–Mart*. There the Court examined whether the class, which sought monetary damages in addition to injunctive relief, should have been certified under Rule 23(b)(2) or Rule 23(b)(3). *Wal–Mart*, 131 S.Ct. at 2557–59. This is a moot point in the class-action practice of this court. A plaintiff may not seek certification under either RCFC 23(b)(2) or RCFC 23(b)(3); it must satisfy both criteria. Nor is the suitability of damages as contrasted to equitable relief an issue; RCFC 23(b) does not mention injunctive and declaratory relief. These matters, given such importance in the Supreme Court's opinion in *Wal–Mart*, do not raise similar issues for this court.

The two rules also have different mechanisms governing how individuals enter and exit the class. Under the Federal Rules of Civil Procedure, (b)(1) and (b)(2) classes are mandatory, *see* Fed.R.Civ.P. 23(c)(3)(A), and (b)(3) classes permit members to affirmatively opt out of them if they do not wish to be bound by the judgment, *see* Fed.R.Civ.P. 23(c)(2)(B)(v) and (c)(3)(B). By contrast, all class actions in this court are "opt-in," *i.e.*, a putative class member must affirmatively choose to be included in the action. RCFC 23(c)(2)(B)(v); *see also Bright*, 603 F.3d at 1277 n. 1.

This difference also has implications for the "rigorous analysis" required by *Wal–Mart*. In that case, the Court placed great emphasis on the opt-out rights afforded to members of a class proposed to be certified under Fed.R.Civ.P. 23(b)(3). *See Wal–Mart*, 131 S.Ct. at 2558. Without such rights, an individual plaintiff might have her individual monetary claim decided via a class action against her will. *Id.* at 2558–59. Thus, an improperly certified class action could impinge upon members' rights to due process. *Id.* at 2559 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86

L.Ed.2d 628 (1985)). These issues will never arise in a class action in this court because all class members must affirmatively opt into a class lawsuit.

As the foregoing discussion demonstrates, the analysis required in this case differs in important respects from the inquiry the Supreme Court undertook in *Wal–Mart*. Yet *Wal–Mart* teaches that it is nonetheless appropriate for this court to examine closely a plaintiff's complaint to ensure that its class allegations are sufficient, here, among other things, to toll the statute of limitations as to the class. Unlike *Wal–Mart*, commonality or justiciability is not really at issue. The complaint alleges a single NITU covering a 3.23–mile railroad right-of-way, which arguably effected a taking for all individuals with underlying or abutting property. Compl. ¶¶ 3, 6. Furthermore, despite the government's protestations, the complaint adequately alleges that Geneva Rock owns property underlying or abutting a portion of the railroad right-of-way, Compl. ¶ 4, and by implication, Geneva Rock satisfactorily contends that it can serve as an adequate and typical representative of the class consisting of other similarly situated property owners.[5] Correlatively, the superiority criterion was pled in the complaint as a generic matter, but no disqualifying issues arise in that regard.

The weakest link in Geneva Rock's complaint bears on numerosity. Nowhere in the complaint does the plaintiff allege the number of putative class members. The plaintiff did not give a reasonable count of the other potential plaintiffs until its motion for class certification—well after the statute of limitations expired. Pl.'s Mem. at 6.

Despite this scant detail about numerosity, the contours of the proposed class are apparent from the context of the complaint, which plainly indicates that the putative class members are the other landowners whose property abuts or underlies that particular section of railway. The complaint does not give the precise number of putative class members, but it does provide some bounds by restricting the class to persons with land underlying or abutting the 3.23–mile length of railroad. In this sense, it gives the government "the essential information necessary to determine both the subject matter and size of the prospective litigation." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). Moreover, as the court in *Toscano* observed, the complaint need only "seek" certification, not conclusively establish that the proposed class qualifies for it, 98 Fed.Cl. at 155 n. 4, and the complaint in *Toscano* was comparable to the one at issue here, *see* Complaint, 98 Fed.Cl. 152 (No. 08–910), ECF No. 1. In this regard, *Wal–Mart* teaches that the requisite analysis may need to "touch[ ]" the merits, not conclusively determine the dispositive issues. *See* 131 S.Ct. at 2551–52 & n. 6. In this instance, neither the nature of the alleged class nor the core issue that is "capable of classwide resolution," *id.* at 2551, are at all mysterious or uncertain. As the Supreme Court said, "[w]hat matters to class certification ... is ... the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quoting Nagareda, 84 N.Y.U. L.Rev. at 132) (quotation marks omitted). Geneva Rock's complaint satisfies that criterion in terms of its class-action allegations. Thus, the court finds Geneva Rock's complaint sufficient to toll the statute of limitations for the duration of the opt-in period.

### B. The Requirements for Certification of the Class Under RCFC 23

Having decided that Geneva Rock's complaint tolled the statute of limitations, the

---

5. The government contends that "[Geneva Rock]'s failure to present competent evidence showing that it holds a cognizable property interest abutting or underlying the railroad line is a failure to meet its evidentiary burden to show that its claims are typical of the claims of the class." Def.'s Resp. to Pl.'s Supplemental Mem. at 3 (citation omitted). This argumentative postulate is wrong. *Wal–Mart* did not abrogate the notice pleadings standard set out in RCFC 8, *viz.*, "[a] pleading that states a claim for relief must contain ... *a short and plain statement of the claim* showing that the pleader is entitled to relief." RCFC 8(a) (emphasis added). Geneva Rock sufficiently alleged that it owns property subject to the NITU and that the putative class members also own such property. Compl. ¶¶ 4, 10–11, 14–15. Neither at the pleading stage nor at class certification is Geneva Rock required to support that allegation by producing its deed to the pertinent property.

court must next determine whether the plaintiff has established that the purported class meets the five criteria derived from RCFC 23. *See, e.g., Haggart,* 89 Fed.Cl. at 530; *Barnes,* 68 Fed.Cl. at 494.

### 1. *Numerosity.*

As this court has remarked before, the numerosity criterion is somewhat peculiar in the context of an opt-in class action. *Haggart,* 89 Fed.Cl. at 530. The Rules of the Court of Federal Claims demand that the class be "so numerous that joinder of all members is impracticable." RCFC 23(a)(1). "Yet, for an opt-in class action, each participating member of the class must act affirmatively to participate, which amounts to joinder in pragmatic terms." *Haggart,* 89 Fed. Cl. at 530. Regardless of this apparent anomaly, "joinder need only be impracticable, not impossible." *Barnes,* 68 Fed.Cl. at 495 (citing *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993)). The plaintiff need not specify the exact number of putative class members, but "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class." *Singleton,* 92 Fed.Cl. at 83 (quoting *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989)). In assessing whether this factor is satisfied, courts consider various attributes of the class, including the number and location of putative class members and the size of individual claims. *See King v. United States,* 84 Fed.Cl. 120, 123–24 (2008) (citing 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1762, at 177, 206–07 (3d ed.2005)).

Courts have taken varied approaches to determining the number of putative class members needed to meet the numerosity requirement. In one popular view, any class larger than 40 is assumed to be sufficiently numerous. *See Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir.2001); *King,* 84 Fed.Cl. at 124; 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.22[1][b], at 23–56 to –59 (3d ed.2011). A recent opinion from a judge of this court held that 25 members would be large enough. *Douglas R. Bigelow Trust v. United States,* 97 Fed.Cl. 674, 676 & n. 6 (2011) (citing six decisions approving classes of sizes ranging from 16 to 25). Others purport to eschew any benchmarks whatsoever. *See, e.g., Jaynes v. United States,* 69 Fed.Cl. 450, 454 (2006) ("[T]he [c]ourt declines to formally adopt a 'presumption' approach to numerosity.").

Another concern is the size of the claims relative to the cost of litigation. Courts are more inclined to certify a class with fewer members when "the costs of litigation threaten to overwhelm the pursuit of smaller claims." *Bigelow,* 97 Fed.Cl. at 677. Under such circumstances, individual plaintiffs would be deterred from pursuing their claims without a cost-saving device such as the class action. *See id.; King,* 84 Fed.Cl. at 125.

A third consideration—albeit one carrying less weight—is the geographic location of the parties. *See King,* 84 Fed.Cl. at 124 (citing *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981)); *see also Haggart,* 89 Fed.Cl. at 531 ("[T]his consideration has been taken into account in such varying ways that it does not often contribute to a particular result."). Presumably, putative class members would find joinder more difficult if they were geographically dispersed.

In the present case, Geneva Rock has identified 22 other persons who own property underlying or abutting the 3.23–mile stretch of railway. Pl.'s Mem. at 6. The plaintiff reportedly arrived at this figure by conducting a search of electronic records of a website maintained by Utah County. *Id.; see also* Pl.'s Mem. Ex. D. The government apparently agrees that there are 23 persons who *currently* own land along the railroad; however, it argues that there is no evidence to suggest these entities owned the land on the day of the taking. Def.'s Opp'n at 12–13. Geneva Rock's showing does appear to be lacking in this respect, but the omission is not a material defect. What matters for class certification is the *number* of class members, not their precise identities. Geneva Rock has shown that its "estimate of the size of the potential class is more than merely speculative," *Singleton,* 92 Fed.Cl. at 84, and the court consequently will rely on the figure it presents.[6]

---

**6.** Although Geneva Rock claims that the government disputes only the identity of the property-

Geneva Rock also claims that the cost of litigating each claim separately would outstrip the value of the claims themselves. Pl.'s Mem. at 8. The government responds by arguing that the plaintiff has provided no hard evidence to support this assertion. Def.'s Opp'n at 17. Although Geneva Rock has not submitted any tentative valuation for each potential member's claim, such estimates are not necessary. This court has recognized that, where "a large number of potential class members each holds a relatively small [part] of the land affected by the NITU[ ]," the costs of litigating a takings claim can easily exceed the just compensation due. *Haggart*, 89 Fed.Cl. at 532; *see also Bigelow*, 97 Fed.Cl. at 677. This result should come as no surprise. In a rails-to-trails case, the taking affects only a narrow strip of land for each plaintiff. Moreover, the plaintiffs are not entitled to the full fee simple value of the land, but rather can claim only the diminution in value caused by the easement. *See Raulerson v. United States*, 99 Fed.Cl. 9, 12 (2011). These two facts typically result in a small stake for each individual plaintiff.[7]

Geneva Rock alleges that that the pertinent property owners reside in seven Utah cities and California. Pl.'s Mem. at 8. The government questions the plaintiff's support for this claim. Def.'s Opp'n at 16. And indeed, Geneva Rock has provided no proof whatsoever for this assertion. To the contrary, all the evidence before the court suggests that the putative class members generally reside along or near the 3.23–mile strip of railway.

■ In sum, the putative class comprises approximately 23 members whose individual claims would likely be outweighed by the cost of litigation. All evidence on hand suggests that the putative class members reside in relatively close proximity to one another and the 3.23–mile stretch of railway. Though this number is on the smaller end of the spectrum, it is still within the acceptable bounds for class certification. Under similar facts, this court has found joinder to be impracticable. *See Bigelow*, 97 Fed.Cl. at 676–77 (certifying a class of approximately 25 members in a rails-to-trails case where the "plaintiffs indicate some of the potential class members own relatively small parcels of land, such that any potential recovery here would like[ly] be exceeded by the litigation costs"). Geneva Rock has shown by a preponderance of the evidence that the proposed class is sufficiently numerous.

### 2. Commonality.

The commonality criterion is generally evaluated based upon a three-part test cobbled together from various parts of RCFC 23. This factor encompasses (1) whether "there are questions of law or fact common to the class," RCFC 23(a)(2); (2) whether "the United States has acted or refused to act on grounds generally applicable to the class," RCFC 23(b)(2); and (3) whether those common questions "predominate over any questions affecting only individual members," RCFC(b)(3). *See Haggart*, 89 Fed.Cl. at 532. Individual class members need not be identically situated to warrant a finding of commonality; "[r]ather, to meet RCFC 23(a)(2), the questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case." *Barnes*, 68 Fed.Cl. at 496.

■ There can be little question that the government acted on grounds applicable to

---

owners, Pl.'s Reply at 4, this is not strictly accurate. Landowner *X* could have owned two parcels when the NITU was issued and then sold one of those parcels to *Y* the following day. As a result, a list of current property-owners would include both *X* and *Y*, when only *X* owned the land on the day of the taking. The bare possibility of such a discrepancy does not render the plaintiff's tally "speculative," however, and so does not preclude class certification.

7. It is certainly possible, as the government argues, that one entity may own the lion's share of

affected land and therefore find it worthwhile to undertake the litigation on its own. *See* Def. Opp'n at 17–18. Yet this argument robs Peter to pay Paul; for if one individual is disproportionately harmed by the taking, then the remaining putative class members would have correspondingly less at stake. So in this outlier scenario, a class action would be all the more vital to ensure that the rest of the class members be able "to vindicate their rights." *Barnes*, 68 Fed.Cl. at 500.

the entire class in this case. The NITU was a single act that affected all putative class members. *See Singleton,* 92 Fed.Cl. at 84; *see also Caldwell v. United States,* 391 F.3d 1226, 1233 (Fed.Cir.2004) ("The issuance of the NITU is the only government action in the railbanking process."). This single act is the wellspring of all the putative class members' claims. A class shares a common question of law or fact "when there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Fisher v. United States,* 69 Fed.Cl. 193, 200 (2006) (citing *Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993)). Here, that issue is whether the NITU issued on December 31, 2002 effected a taking of the class members' property. *See, e.g., Bigelow,* 97 Fed.Cl. at 678.

Class-wide questions predominate over issues specific to individual members "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Barnes,* 68 Fed.Cl. at 496. The central legal questions of this case—concerning the original easement given to the railroad, the reversionary rights of the class members under Utah law, and the effect of the NITU on those rights—can all be resolved through generalized proof. Even though the question of just compensation will require "individualized proof" if the government is found liable, this court has repeatedly held that the overall question of liability is "more substantial" than the individualized calculation of damages. *See, e.g., Haggart,* 89 Fed.Cl. at 533–34 ("[D]ifferences in the amount of potential damages ... will not alone prevent class certification.").

The government contends that Geneva Rock has failed to demonstrate commonality because (1) it has not proven that the entire railway was conveyed by a single grant pursuant to a federal statute in 1875, and (2) it has not shown what kind of interest the other putative class members have in their property. Def.'s Opp'n at 21–22. The first point goes to the ultimate question of liability and

need not be established now. *See Singleton,* 92 Fed.Cl. at 85 ("[T]he nature of [the railroad's] interest in the right-of-way is more of an ultimate issue in this litigation and less indicative of whether the named [p]laintiffs' claims are typical of the class."); *see also Hubbert v. United States,* 58 Fed.Cl. 613 (2003) (considering the specific conveyances to the railroad during the merits of the proceeding). While *Wal–Mart*'s "rigorous analysis will [frequently] entail some overlap with the merits of the plaintiff's underlying claim," here the government's contentions do more than "touch[ ] aspects of the merits." 131 S.Ct. at 2551–52 (internal quotation marks omitted) (quoting *Falcon,* 457 U.S. at 160, 102 S.Ct. 2364). At this stage Geneva Rock's exhibits show that, more likely than not, all the putative class members share "at least one core common legal question that is likely to have one common defense." *King,* 84 Fed.Cl. at 125 (quoting *Fisher,* 69 Fed.Cl. at 199) (internal quotation marks omitted).

The government's second concern is even less relevant here. If the NITU did effect a taking, then the putative class members will be owed just compensation regardless of the specific property interest they held in the land. *See, e.g., United States v. General Motors Corp.,* 323 U.S. 373, 382, 65 S.Ct. 357, 89 L.Ed. 311 (1945) ("When [the government] takes the property, that is, *the fee, the lease, whatever he may own,* terminating altogether his interest, under the established law it must pay him for what is taken.") (emphasis added). Granted, there will be variation in the amount of compensation due to class members holding different property interests. Yet as discussed *supra,* such discrepancies are incidental to the basic question of whether the NITU entitles them to compensation at all. *E.g., Bigelow,* 97 Fed.Cl. at 678 ("[A]lthough plaintiffs may be entitled to different amounts of just compensation, if awarded, the decision would be based on the same core facts and legal issues.") (citing *Curry v. United States,* 81 Fed.Cl. 328, 334 (2008)).

### 3. *Typicality.*

Typicality is intertwined with commonality. *See Barnes,* 68 Fed.Cl. at 498. Under RCFC 23(a)(3), "the claims or defens-

es of the representative parties [must be] typical of the claims or defenses of the class." Typicality requires that "the named plaintiff's claim and the class be so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Barnes*, 68 Fed.Cl. at 498. The named plaintiff need only show that its "claims share the same essential characteristics as the claims of the class at large." *Curry*, 81 Fed.Cl. at 335 (quoting *Fisher*, 69 Fed.Cl. at 200). This requirement has been satisfied where the "claims ... of the representatives and the members of the class stem from a single event or unitary course of conduct, or if they are based on the same legal or remedial theory." *King*, 84 Fed.Cl. at 126 (quoting 7A Wright et al., *Federal Practice & Procedure* § 1764, at 270–71).

■ Here, Geneva Rock's claim shares the same essential characteristics as the claims of the class because they are all based on the same factual and legal predicates. Both the named plaintiff and the putative class members own land affected by the NITU issued December 31, 2002. *See* Pl.'s Mem. at 6 & Ex. D. Further, all plaintiffs seek a remedy from this court arising from the same governmental action and premised upon a common theory of recovery, that the NITU constituted a taking of the plaintiffs' property in contravention of the Fifth Amendment. Pl.'s Mem. at 6. Thus, Geneva Rock's claims are typical of those of the class.

The government has leveled the same challenges to the plaintiff's typicality as it did to the plaintiff's commonality. Def.'s Opp'n at 21–22. For the same reasons discussed *supra*, these arguments are without force.

#### 4. *Adequacy.*

In assessing whether "the representative parties will fairly and adequately protect the interests of the class," RCFC 23(a)(4), courts ask two questions. First, does the proposed class counsel possess the experience, knowledge, and resources necessary to represent the class competently? *See Haggart*, 89 Fed.

Cl. at 534 (citing RCFC 23(g)(1)(A)). Second, do the putative class members "have interests that are 'antagonistic' to one another"? *Barnes*, 68 Fed.Cl. at 499 (quoting *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir.1992)).

■ Here, the proposed class counsel have worked on numerous rails-to-trails cases, Pl.'s Mem. at 14–15, and two of the attorneys have extensive trial experience, *id.* at 13–14. Plaintiff's counsel have already conducted an initial investigation into the land records and identified potential class members. *Id.* at 15. Their firm has represented that it possesses the resources to manage the class action. *Id.* Taken as a whole, the credentials and accomplishments of class counsel indicate that they are "qualified, experienced, and generally able to conduct the proposed litigation." *Quinault Allottee Ass'n v. United States*, 453 F.2d 1272, 1276 n. 3 (Ct.Cl.1972).[8]

Nor is there any suggestion that the putative class members have interests that would put them at odds with one another. To the contrary, "the interests of the named plaintiffs and the proposed class members are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same government actions, the issuance of the [NITU]." *Haggart*, 89 Fed.Cl. at 535.

#### 5. *Superiority.*

■ Lastly, the plaintiff is required to show that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b)(3). "Essentially, under this prong of the analysis, the court is obliged to conduct a cost[-]benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action." *Barnes*, 68 Fed.Cl. at 499 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163–64, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); 7A

---

**8.** The court reserves the right to reconsider this decision if the attorneys separate from the firm, or if the firm materially diminishes or no longer has the capacity to provide the support described by plaintiff in its motion, or if the firm dissolves while this litigation is pending. Counsel shall promptly notify the court by motion if any of these events occur.

Wright et al., *Federal Practice & Procedure* § 1780, at 197–98).

█ The benefits presented by the class action in this particular case are similar to those recognized in other rails-to-trails cases. A class action here would resolve numerous claims in a single action, sparing the litigants the time and expense of multiple trials. *See Haggart,* 89 Fed.Cl. at 535. It would encourage efficiencies in common title research, property appraisals, and experts. *Singleton,* 92 Fed.Cl. at 86. Furthermore, the court is not likely to encounter any difficulty in managing the action. The putative class members are readily identifiable and must affirmatively opt into the class. *See id.* "[P]rocedural fairness would not be compromised by class certification because notice to potential class members can be provided relatively easily; all proposed class members are owners of property situated along a defined right-of-way." *Haggart,* 89 Fed.Cl. at 536. The government has not pointed out any significant detriments to the class action that might outweigh the benefits in this case. Under these circumstances, the plaintiff has satisfied this requirement.

#### 6. *Synopsis.*

For the foregoing reasons, the court finds that all criteria for class action certification have been met and that the plaintiff has shown by a preponderance of the evidence that this case should be certified as a class action.

### CERTIFICATION

Upon granting class certification, the court "must define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)." RCFC 23(c)(1)(B).

#### A. *Composition of the Class*

The court adopts the following definition of the class:

> All those persons or entities who (1) own an interest in lands constituting part of the railroad corridor or right-of-way on which a rail line was formerly operated by Union Pacific between milepost 772 near Cutler and milepost 775.23 near Mount, in Utah and Salt Lake Counties, Utah; (2) claim a taking of their rights to possession, control, and enjoyment of such lands as a result of the Notice of Interim Trail Use issued December 31, 2002; and (3) who affirmatively opt into this lawsuit in accord with procedures to be established by the court; but (4) excluding owners of land that abuts segments of the subject right-of-way to which the railroad acquired fee simple title, and railroad companies and their successors in interest.

#### B. *Delineation of Class Issues*

The court defines the primary issue for the class to be whether the Surface Transportation Board's issuance of a NITU on December 31, 2002 constituted a taking of the plaintiffs' property in contravention of the Fifth Amendment, requiring the United States to pay the plaintiffs just compensation. The resolution of this issue will necessarily require the court to consider: (1) whether the class members owned compensable property interests in the right-of-way on December 31, 2002; (2) the nature of Union Pacific's interest in the railroad line compared to any interest retained by the original grantors; and (3) if a taking did occur, the amount of just compensation due each landowner.

#### C. *Appointment of Class Counsel*

This court's rules allow for only "one attorney of record" who shall be "an attorney (not a firm)." RCFC 83.1(c)(1). All other attorneys in the matter shall be designated "of counsel" for the class. *Id.* Accordingly, the plaintiffs shall designate one of J. Robert Sears, Brent W. Baldwin, Steven M. Wald, Thomas S. Stewart, Elizabeth G. McCulley, or Anne E. Baggott to be the attorney of record. The law firm of Baker Sterchi Cowden & Rice, L.L.C. and the above-named individuals not chosen as attorney of record shall be designated "of counsel" in future submissions to the court.

#### D. *Provision Regarding Attorneys' Fees*

RCFC 23(g) permits the court to "order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs." RCFC 23(g)(1)(C). On

or before September 28, 2011, plaintiffs' counsel shall file a status report describing the record-keeping procedures regarding attorneys' fees and other expenses in this litigation and the terms of any existing agreements with the named plaintiff regarding the payment of attorneys' fees and other expenses of the litigation.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to certify class action is GRANTED. The court certifies a class action in this case and appoints one of J. Robert Sears, Brent W. Baldwin, Steven M. Wald, Thomas S. Stewart, Elizabeth G. McCulley, and Anne E. Baggott as class counsel, with the particular individual designated as counsel of record by the plaintiffs to be named in a submission to the court made on or before September 28, 2011. Also on or before that same date, class counsel shall provide the court with the status report specified in Part D above regarding attorneys' fees. On or before October 6, 2011, the parties shall file a joint status report proposing a plan to satisfy the notice requirements of RCFC 23(c)(2) and addressing further proceedings.

Pursuant to RCFC 10(a), all subsequent pleadings in this case shall use the caption shown above.

It is so ORDERED.